IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN ILLINOIS

FM INDUSTRIES, INC.                          )
                                             )
            Plaintiff                        )
                                             )
      Vs.                                    )    Case No. 07CV 01794
                                             )    Judge Conlon
CITICORP CREDIT SERVICES INC                 )
a Delaware Corporation                       )
JEANETTE BROWN                               )    Magistrate Judge Denlow
JOHN GILLARD                                 )
LAW OFFICES OF ROSS GELFAND                  )
and JAMES CORTEZ, Attorney at Law            )

## RESPONSE TO 12(B) 3 MOTION TO STAY UNDER

## Colorado River Doctrine or Dismiss For Improper Venue or in the alternative for

## referral to the Bankruptcy Court.

### FACTUAL BACKGROUND

On May 26th, 2005, the Defendant in this matter CITICORP CREDIT SERVICES

INC. filed a complaint in the Circuit Court of Cook County entitled CITICORP CREDIT

SERVICES INC. vs. FMI INC. an Illinois Corporation and MICHAEL FRIEDMAN

individually and as an officer and agent of FM INDUSTRIES, case number 05CH 4007,

filed under seal.   Said matter remains pending before Judge Bronstein, although

proceedings are currently stayed.

On July 19, 2005, FMI INDUSTRIES filed a counter complaint against CITICORP

CREDIT SERVICES INC. and a third party complaint against JEANETTE BROWN and

JOHN GILLARD.   The substance of the counter claim and third party complaint was that

CITICORP CREDIT SERVICES INC. breached a certain Vendor Service Agreement

with FM INDUSTRIES INC., that CITICORP. breached the winding down provisions of

1

the Vendor Service Agreement, that CITICORP breached the covenant of good faith and fair dealing, that CITICORP was guilty of violating promissory estoppel; that CITICORP. was guilty of conversion, that CITICORP and JEANETTE BROWN were guilty of tortuous interference with contracts and that JEANETTE BROWN and JOHN GILLARD were guilty of violating the RICO statute 18 U.S.C. § 1962 c and d.

That these complaints go far beyond Plaintiff's complaint for copyright infringement in the matter before the bar.

That on February 3, 2005, MICHAEL FRIEDMAN and his wife Christine Friedman filed a Chapter 7 bankruptcy, Case No. 05B 03591 and said matter is now pending before Judge Wedoff. That said bankruptcy was filed prior to the filing of CITICORP's state action.

That on or about December 7th, 2005 the Defendant, CITICORP CREDIT SERVICES INC. filed a memorandum in the state court action in support of its motion to dismiss Count V of the FM INDUSTRIES counter-claim. A copy of said memorandum is attached as Exhibit A.

Although there never was a ruling on CITICORP's motion to dismiss the state action case due to the fact that the proceedings are currently stayed, it is indicative of CITICORP's argument that this matter belongs in the Federal Court.

## ARGUMENT

A) This court should not abstain from proceeding in this matter as this matter properly belongs in the Federal Courts. Plaintiff acknowledges the existence of the Colorado River Doctrine as set forth in the case of Colorado River Water Conservation

2

District vs. United States found at 424 U.S. 800.817(1976). However the doctrine, if it applies at all is discretionary with the court not mandatory. It is the contention of the Plaintiff in this matter that the parties in the two matters are not substantially the same. It is true that CITICORP, FM INDUSTRIES INC., JEANETTE BROWN and JOHN GILLARD are involved in both law suits; but MICHAEL FRIEDMAN is not a party to the Federal law suit. In addition, two additional Defendants: LAW OFFICES OF ROSS GELFAND LLC and JAMES CORTEZ, Attorney at Law have been added to the Federal action in Plaintiff's Amended Complaint. The basis for adding these two additional Defendants is that both of them infringed on FMI's copyrights in the T.U.C.A.N.S. system by continuing to illegally use the system after the termination date of the agreement.

Further, that there are at least eight (8) other attorneys throughout the United States with the potential of forty five (45) total, who have been retained by CITICORP to handle collection matters, who are believed to still be using the T.U.C.A.N.S. system in violation of a licensing agreement with FM INDUSTRIES INC. These additional parties may very well be added to this law suit.

With these other potential parties being located throughout the United States, the Federal Court would be the most logical place to resolve this matter on a diversity basis, rather than the state court. A factor to consider as stated in Defendant's memorandum on Page 7 is "when the closer forum (is) inappropriate because of considerations affecting the court's own administration and legal problems." The Circuit Court of Cook County is one of the largest, if not the largest, court system in the world with a

3

considerable backlog of cases[1]. It is in the best interests of justice that this matter involving numerous parties and attorneys be resolved in the most effective and timely matter. The proper forum on this basis would be the United States District Court for the Northern District of Illinois, Eastern Division.

B)    This action does not parallel the state action.    The matter before the bar is a three count complaint alleging copyright infringement pursuant to 17 U.S.C. § 501, et.seq.    The state action is a multi count complaint alleging breach of the Vendor Service Agreement, breach of the covenant of good faith and fair dealing, promissory estoppel, conversion, tortuous interference with contracts and RICO violation.    Thus the state court action is a much broader claim that the Federal action which only involves copyright infringements.    Thus the two actions are not parallel.

C)    Ten-Prong Seventh Circuit Test.    In responding to Defendant's arguments, the Plaintiff will only respond to those items raised by the Defendant being items 3, 4, 6, 7, 9, and 10 of the 10 prong test.    As to item #3 as previously stated, the issues involved in the state court action are not the same as in the federal action.    The only real issue to decide in the federal action is whether the Defendants violated the copyrights of the Plaintiff.    The Federal Courts by reason of their familiarity with copyright matters, is best suited for resolving this issue.    In their motion to dismiss Count V of the counter claim in the state court, CITICORP argues as follows:

---

[1] Wayne Rhine before returning to private practice served on the Circuit Court of Cook County for more than 23 years and as a supervising Judge is well aware of the backlog.

4

## **ARGUMENT**

I.    FMI's Conversion Claim is Preempted by Federal Copyright Law.

The Federal Copyright Act preempts all state law causes of action that are
equivalent to copyright infringement claim. 17 U.S.C. § 301(a); Higher Gear Group Inc.
v. Rockenbach Chevrolet Sales, Inc., 223 F. Supp. 2d 953, 956 (N.D> Ill. 202). Since
Count V seeks to enforce—through a common law conversion claim – intellectual
property rights in purported copyrights held by FMI, it is preempted by federal law.

Section 301(a) of the Copyright Act states, "all legal or equitable rights that are
equivalent to any of the exclusive rights within the general scope of copyright as
specified by § 106 in works of authorship that are fixed in a tangible medium of
expression and come within the subject matter of copyright …. are governed exclusively
by this title." 17 U.S.C. § 301(a). While CCSI disputes that it has infringed (or that by
its actions it would in any way infringe) any FMI copyrights, there can be no reasonable
dispute that the precise protections FMI seeks to enforce in Count V are the legal
equivalent of those afforded by the copyright laws – a taking and conversion, e.g.,
copying or reproducing, of copyrighted information is copyright infringement under 17
U.S.C. § 501(a) – and are therefore governed by federal copyright laws to the exclusion
of state law remedies".

It seems somewhat strange that in the state court action, CITICORP argues that
the action is pre-empted by Federal law but when the Plaintiff seeks relief in the Federal
Court, CITICORP seeks to have the matter heard in the state court[2].

---

[2] It is also strange that the Defendants in a previous motion before this Court, raised the issue that the attorney for
the Trustee receive notice of all pleadings in this matter which this Court ordered, and yet here they have failed to do
so in this motion and failed to adhere to this Courts order.

5

Point #4. The order in which jurisdiction was obtained by the concurrent forum.

It is true that the state court action commenced first. However, Judge Bronstein has stayed the matter pending the outcome of the bankruptcy matter. The bankruptcy was filed prior to the initiation by CITICORP of the state action. A no assets discharge was obtained by the FRIEDMANS. It was only after CITICORP, through its attorneys sent, both a redacted and an un-redacted copy of the counterclaim to the U.S. Trustee, in violation of Judge Bronstein's Protective Order, that the bankruptcy was reopened and remains pending with the resulting stay of the state court proceedings. Since, as a result of the conduct of CITICORP, the state court action is at a standstill. With the large backlog existing in the state courts, this matter can be resolved either by mediation, settlement or trial much sooner in the Federal Court, than in the state court.

#6 The adequacy of the state court action to protect the federal plaintiff's rights.

This factor does not favor the state court action because copyright matters are governed exclusively by the Federal Copyright Act. The federal courts have considerable experience in dealing with such matters, not the state courts, and thus, the matter should remain in the Federal Court.

Factor #7 The relative progress of state and federal proceedings.

Although, discovery has commenced in the state court action all matters remain stayed per Judge Bronstein's original order of April 7, 2006 reiterated in his order of April 2, 2007 a copy of which is attached as exhibit B, and as recently in his order of June 4, 2007.

Without waiting for a ruling by the court, the Defendant, CITICORP has initiated reams and reams of discovery in this matter, most of which is irrelevant. The state court as a result of its stay order, does not have a significant head-start in this matter.

Factor #10 The vexatious or contrived nature of the federal claim.

Once again the federal action differs significantly from the state action as previously set forth. Thus it is not an effort to circumvent Judge Bronstein's order.

## TRANSFER TO BANKRUPTCY COURT

The main thrust of Defendant's argument is that MICHAEL FRIEDMAN is the co-owner of the copyright in question and thus the copyright infringement case should be referred to the Bankruptcy Court as part of MICHAEL FRIEDMAN's estate. Although it is true that the 2006 filing in the copyright office reflects MICHAEL FRIEDMAN and FM INDUSTRIES INC as copyright claimants, the previous filings for 2001 through 2005 list only FM INDUSTRIES INC. as the copyright claimant. See attached exhibits. It is important to note that MICHAEL FRIEDMAN is not the alter-ego of FM INDUSTRIES INC. MICHAEL FRIEDMAN is a minority share holder in FM INDUSTRIES INC. owning approximately 21% of the stock of FM INDUSTRIES INC. MICHAEL FRIEDMAN is an officer and employee of FM INDUSTRIES INC.

**A.** **FMI is the Sole Owner of the Copyright Registration Because Michael Friedman was an Employee of FMI when He Contributed to the Work and the Work was Created as a Work Made for Hire**

As noted above, MICHAEL FRIEDMAN was at all relevant times an employee of FMI. He was the President and CEO of FMI and a member of its Board of Directors.

7

He performed services for FMI as directed by FMI and was subject to FMI's control and right to control. Part of his duties as an FMI employee included certain computer programming in connection with the TUCANS product. Thus, whatever contributions MICHAEL FRIEDMAN made to the TUCANS product, they were made as an employee of FMI, and thus as a work made for hire. Thus, by statute, FMI is the author and not MICHAEL FRIEDMAN, individually. See 17 U.S.C. 201(b). As author, ownership of the copyright in the TUCANS work initially vests in FMI. See 17 U.S.C. 201(a).

Because FMI is statutorily deemed the author, and ownership initially vests in it and not MICHAEL FRIEDMAN, the next question is whether there was any transfer of ownership in the copyright rights from FMI to MICHAEL FRIEDMAN to enable MICHAEL FRIEDMAN to state on the application that individually he was a copyright owner. The erroneous statements made in the copyright registration cannot operate to provide MICHAEL FRIEDMAN with ownership rights. The Copyright Statute sets forth the requirements on transfer of copyrights rights. The Copyright Statute requires a writing signed by the copyright owner (or its agent) to transfer ownership rights. See Section 204(a) ("a transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owners duly authorized agent"); see also Section 201(b) ("unless the parties have expressly agreed otherwise in a written instrument signed by them.."); Thus, because there were not written agreement in place between FMI and MICHAEL FRIEDMAN, there was no transfer of rights to MICHAEL FRIEDMAN from FMI. Thus, there is nothing to change

8

the statutory scheme which automatically vested the employer FMI with copyright
ownership in its employee MICHAEL FRIEDMAN's creation.

The mere fact that MICHAEL FRIEDMAN erroneously filled out the copyright
application does not change the fact of authorship and does not operate as an
assignment the legal consequences of ownership.

## B. **Michael Friedman Owed a Fiduciary Duty to FMI AND He Had an Obligation to Assign All of His Rights in the Copyright to FMI**

Even if MICHAEL FRIEDMAN is determined not to be an employee of the
company, as discussed above, but an independent contractor, he still does not have a
valid claim to ownership of the copy right in the TUCANS work. At all relevant times,
MICHAEL FRIEDMAN was the CEO, President and a Director of the company. As
such, he owed a fiduciary duty to the company and could not usrp FMI's corporate
business opportunities for himself. See Robinson v. R&R Publishing Inc., 943 f.Supp.
18, 20-22 (D.C. 1996) (officer and director of company had fiduciary duty to company
under corporate opportunity doctrine, attempt to claim personal exclusive ownership in
copyright rejected); citing Ampersand Productions Inc. v. Stahl, 1986 WL 2449 (E.D. Pa.
1986) (defendant owner of a copyright usurped business opportunity belonging to
corporation by claiming ownership in the copyright that should have belonged to
corporation).

While Robinson was decided under District of Columbia law, Illinois law will be
applicable here and should render the same result. In similar situations that involved
claims of ownership of inventions and/or patents covering the inventions, Illinois law
applies a fiduciary standard to corporate officers and directors. See e.g.,Grip Nut Co. v

9

Sharp, 150 F.2d 192, 197 (7th Cir.1945) (employee had duty of fidelity to assign invention to company); LeFiell v United States, 162 Ct.Cl. 865, 869 (U.S. Court Claims 1963) (president-inventor had fiduciary obligation to assign invention and patent application to company); Kenneth v. Wright, 676 F. Supp. 888, 892 (C.D. Ill. 1988) ( Inventor-president of company is more than a mere employee and occupies a special relationship of trust and confidence to the business and fiduciary obligations compel that assignment of the patent to the company); Diversy v. Mertz, 13 F. Supp. 410, 415 (N.D. Ill 1936) (vice-president and general manager-inventor who claimed to be an inventor had fiduciary obligation to assign invention to company); Dowse v. Federal Rubber Co., 254 Fed. 308, 310 (N.D. Ill. 1918) (president –inventor had duty to assign invention to company).

This rule is the same in Illinois as it is in other jurisdictions. See e.g., Great Lakes Press Corp. v Froom, 695 F. Supp. 1440, 1446-48 (W.D.N.Y. 1987) (president-inventor had fiduciary obligation to assign invention to company); North Branch Products v Fisher, 1961 U.S. Dist. LEXIS 3974, (D.D.C. Sept. 27, 1961) (secretary/treasurer-inventor had fiduciary obligation to assign inventions and patent applications to company); Scott System Inc v. Scott, No. 98CA 2402, 2000 Colo. App. LEXIS (Jan. 20, 2000) ("All officers and directors of a corporation owe a fiduciary duty to the corporation and to its shareholders… Such a fiduciary duty obligates an officer or director to assign a patent to the corporation.")

## C.    The Copyright Registration Should Be Corrected to Fix the Errors It Contains

The copyright registration has a number of errors, but it does not operate as an assignment of any rights to MICHAEL FRIEDMAN. As discussed above, MICHAEL FRIEDMAN has no rights in the copyright, and should not be listed as a claimant. In the Certification, MICHAEL FRIEDMAN should not have certified that he was an author, he should have certified that he was an authorized agent of FMI.

The mere fact that there are errors in the registration does not make it operate as an assignment. Likewise, the errors do not invalidate the registration. See Tiffany Design, Inc. v. Reno-Tahoe Speciality, Inc, 55 F. Supp. 1113, 1117 (D.Nev. 1999) ("Inaccuracies in a certificate are of significance only in situations involving allegations of an intent to defraud of prejudice."); Morelli v. Tiffany and Co., 186 F.Supp. 2d 563, 565 (E.D. Pa. 2002) ([I]nadvertent and immaterial and misstatement on an application do not invalidate a registration.").

The errors can be corrected. All the errors were made in good faith. MICHAEL FRIEDMAN, who is not a lawyer, and who did not consult with a copyright attorney prior to filing the application, completed the application to the best of his ability and understanding. Thus, the errors are minor and can be readily fixed with a supplemental registration as the statute provides. See Thomas Wilson & Co. v. Irving J Dorfman Co Inc. 433 F. 2d 409, 412 (2d Cir. 1970) (naming president of plaintiff corporation as author was "minor error, was made in good faith and could not have affected the action taken by the Copyright Office.") citing Pantone, Inc. v. A. I. Friedman Inc. 294 F. Supp. 545, 551 (S.D.N.Y. 1968).

11

17 U.S.C. § 408(d) authorizes the Copyright Office to establish procedures to correct errors or amplify information in a registration. Provided that there was no fraud on the Copyright Office, that is, the errors were made in good faith, they should be correctable.

Thus since MICHAEL FRIEDMAN is not the owner of the copyright, the copyright infringement matter does not belong in the Bankruptcy Court but properly belongs before this Honorable Court.

## CLAIM OF CITICORP

## IN THE BANKRUPTCY ACTION

The claim of CITICORP. in the bankruptcy action is tenuous at best . At a September 28th, 2006, hearing Judge Wedoff in addressing attorney, Gregg Jordan of the Law Firm of Dykema Gossett, representing CITICORP stated:

THE COURT: Okay. Let me tell you – just explain, because I don't want to take up any more time on this. Insofar as your client is concerned, there is a considerable potential merit to the 305 motion. It may be very appropriate to have this case not go forward to the extent it's basically an adjunct to litigation that's going on in state court.

Whether it goes forward with respect to your client depends largely on whether there is a net amount owing from Mr. Friedman to your client. And to the extent that the basis for the case going forward is an asset that consists of a claim against your client, you're not in a good position to ague against a Section 305 motion. The trustee is in a very different position in that respect.

So what I'm going to do is to allow the trustee to take this 2004 exam with a reasonable document request. If you have information that you think would be valuable

12

to the trustee, you can certainly supply that to the trustee, and I'm sure the trustee would be happy to get your information.

But the point I'm trying to make is that your client's standing right now is dubious in light of the state court litigation that is going on, and in light of the potential for this bankruptcy case being reopened by your client primarily as an adjunct to the state court litigation. Pages 11, Line 23 to Page 12, Line 25 of the transcript of said hearing, which is attached hereto as Exhibit C.

Thus the Bankruptcy Court does not look favorably upon the CITICORP claim and it cannot be argued that it is a "core proceeding". It is believed that the only purpose of CITIBANK's involvement in the bankruptcy matter is to sell MICHAEL FRIEDMAN's minority stock ownership in FM INDUSTRIES INC. in an effort to somehow gain control of FM INDUSTRIES INC. and terminate the litigation against CITICORP.

Therefore, by reason of the above and foregoing the Defendants 12(B) 3 Motion should be denied in its entirety.

Respectfully submitted.

By:_____
Wayne Rhine

**WAYNE RHINE, ESQ.**
**Attorney for Plaintiff**
**500 W Madison St., Suite 2910**
**Chicago, IL. 60661**
**312-474-4532**
**Attorney Reg. #2323990**

13

## CERTIFICATION OF SERVICE

I, Wayne Rhine hereby certify that on June 15, 2007, I caused to be delivered a

copy of the **RESPONSE TO THE RULE 12 B 3 MOTION** to the following:

Richard Gottlieb
Allan Sternstein
Gwen Geraghty
Michelle Fisher
All at the Law Firm of
Dykema Gossett PLLC
10 S Wacker Dr, Suite 2300
Chicago, IL. 60606

And

Bruce de'Medici
Mandell Menkes LLC
333 W Wacker Dr, Suite 300
Chicago, IL. 60602

And

John J. Duffy
Karen Kies Degrand
Charles S. Ofstein
All at the Law Firm of
Donohue, Brown, Mathewson & Smyth, LLC
140 S. Dearborn, Suite 700
Chicago, IL 60603

and by attempting to electronically file said response with the Clerk of the Court using

the ECF system which sent notification to said counsels and hand delivered by

messenger.

Wayne Rhine

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CITICORP CREDIT SERVICES, INC.
(USA), as successor to CITICORP CREDIT
SERVICES, INC.,

        Plaintiff,

vs.

FM. INDUSTRIES, INC., *et al,*

        Defendants.

No. 05 CH 9007

Judge Bronstein

**FILED UNDER SEAL**

FM. INDUSTRIES, INC.,

        Counter-Plaintiff,

vs.

CITICORP CREDIT SERVICES, INC.,

        Counter-Defendant.

## MEMORANDUM IN SUPPORT OF CCSI'S
## MOTION TO DISMISS COUNT V OF FMI'S COUNTERCLAIMS

In further support of its Section 2-615(a) motion to dismiss Count V of FM. Industries, Inc.'s ("FMI's") Counterclaims and Third Party Complaint,[1] counter-defendant Citicorp Credit Services, Inc. (USA), Inc., as successor to Citicorp Credit Services, Inc. ("CCSI"), states as follows:

---

[1]      Supported by separate memoranda, CCSI and third-party defendants Jeanette Brown and/or John Gillard are concurrently filing: (1) a Section 2-615 Motion to Dismiss Counts I and II; (2) a Section 2-615(a) Motion to Dismiss Count III and IV; (3) a section 2-615(a) Motion to Dismiss Count VI; and, (4) a Section 2-615(a) Motion to Dismiss Count VII.



## INTRODUCTION

FMI's counterclaims make repeated reference to purported copyrights, but no claim for copyright infringement is ever made. Count V of the counterclaims is, however, a federal copyright infringement claim dressed up as a claim for conversion under state law. Since copyright infringement claims are exclusively within the province of federal law, Count V, as stated, fails to state a claim upon which relief may be granted.

Until FMI has a copyright registration (and it appears it does not), its claim is barred. If it obtains a registration, then its claim can be brought under that registration and the Federal Copyright laws, and under specific rules and regulations defining the information that can be protected by FMI, by CCSI or freely used by either.

## APPLICABLE STANDARDS

A section 2-615(a) motion to dismiss challenges the legal sufficiency of a complaint by alleging defects on the face of the pleading. *Haddick v. Valor Insurance*, 198 Ill. 2d 409, 413-14 (2001). "Upon review, all *well-pleaded* facts in the complaint are taken as true. Facts apparent from the face of the pleadings, including the exhibits attached thereto, may be considered." *Haddick*, 198 Ill. 2d at 414 (emphasis added) (citing *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 491-92 (1999)).

As noted above, if an instrument is attached to the pleading as an exhibit, such as the Vendor Service Agreement here, "it constitutes part of the pleading for purposes of ruling on motions relating to the pleadings and for purposes of determining what issues have been raised for trial." *Bajwa v. Metro. Life Ins. Co.*, 208 Ill. 2d 414, 431 (Ill. 2004) (citing 735 ILCS 5/2-606 (West 1996)).

Under Illinois' fact-pleading standard, "[t]he requirement that a complaint set forth facts necessary for recovery under the theory asserted is not satisfied, in the absence of the necessary

2

allegations, by the general policy favoring the liberal construction of pleadings." *Teter v. Clemens*, 112 Ill. 2d 252, 256-57 (1986). Accordingly, a court must disregard conclusions and look only to well-pled facts to determine whether they are sufficient to state a cause of action. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 368-69 (Ill. 2004). If not, the motion must be granted, "regardless of how many conclusions the count may contain and regardless of whether or not they inform the defendant in a general way of the 'nature of the claim against him." *Id.* (citing *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 426 (1981).

### FACTUAL BACKGROUND

Consistent with applicable law, the facts listed below are assumed to be true for purposes of this motion only, and CCSI denies that defendants are entitled to any relief on such facts:

*The Parties*

Plaintiff CCSI is a corporate affiliate of Citigroup that, among other things, administers the debt collection efforts of Citigroup affiliates such as Citibank, a national bank. (Counterclaims ¶ 3.) CCSI's efforts and services include, *inter alia,* hiring attorneys to pursue delinquent accounts. (*Id.* ¶ 11.) CCSI also electronically organizes and maintains the records pertaining to such debt collection efforts. (*Id.* ¶¶ 12-13.) Ms. Brown, as pled, is the Vice President – Litigation of Citicorp. (*Id.* ¶ 4.)

FMI provides software, systems and MIS reporting support with respect to debt collection related efforts initiated by outside collection attorneys. (*Id.* ¶¶ 6-9.). It is the owner of a computer software system know as TUCNET, and of a software system called "T.U.C.A.N.S." (*Id.* ¶¶ 7-9.)

3

*The Vendor Service Agreement*

The contract at the heart of FMI's counterclaims, the Vendor Service Agreement ("Agreement," incorporated here by reference and attached to the Counterclaims as Exhibit A), was entered into between CCSI and FMI in mid-2001. Under that Agreement FMI was to provide CCSI with a computer system to facilitate management of the CCSI collection process, so far as that process related to the debt collection efforts initiated by CCSI's outside collection attorneys. (*Id.* ¶¶ 15-17.) FMI is the copyright owner of the system, software and related documentation. (*Id.* ¶¶ 19, 22.)

*The Licensing Agreement*

In order to provide services to CCSI in connection with the Agreement, FMI was authorized by CCSI to enter into various licensing agreements, a copy of which was attached to the underlying Agreement as Exhibit B with CCSI's retained debt collection attorneys. (*See* Agreement, § 2.3.) Under licensing these agreements, CCSI's collection attorneys gained access to FMI's systems known as "TUCNET" and "T.U.C.A.N.S." The FM. Industries, Inc. TUCNET & T.U.C.A.N.S. Software License and Service Agreement ("Licensing Agreement") is attached as Exhibit B to the Agreement, which was incorporated by reference as Exhibit A to the Counterclaims. (Counterclaims ¶ 16.)

The Licensing Agreement provides that FMI "shall at all times remain the sole and exclusive property of FMI." (Counterclaims ¶ 22.) It further provides that the CCSI attorneys were not to "use, copy, modify or transfer the FMI Software, the FMI system or any FMI Information...except as expressly provided for in this Agreement." (*Id.* ¶ 23.)

4

*FMI Asserts it Has a Valid Copyright*

FMI has a copyright to the T.U.C.A.N.S. software system (*id.* ¶ 10), and all FMI Information remained the sole and exclusive property of FMI (*id.* ¶ 85).

FMI claims that CCSI directed its collection attorneys to copy and move FMI's copyrighted and proprietary information relating to the file accounts and contained on the T.U.C.A.N.S. system to other third-party software systems, and its collection attorneys copied such information and returned the information to CCSI. (*Id.* ¶¶ 60-61.) After discovering CCSI's purported action, in alleged violation of FMI's contractual and copyright legal rights, FMI sent letters to the collection attorneys in order to protect FMI's copyrighted, proprietary and confidential information. FMI, however, had no manner to track the alleged conversion, and thus has no knowledge, regarding the extent of CCSI's alleged wrongful conversion. (*Id.* ¶¶ 63-65.)

CCSI thus allegedly took and converted the FMI Information from the T.U.C.A.N.S. system, retained control of the information, and deprived FMI of the information it owns. (*Id.* ¶¶ 85–87.)

## ARGUMENT

### I.    FMI's Conversion Claim is Preempted by Federal Copyright Law.

The Federal Copyright Act preempts all state law causes of action that are equivalent to copyright infringement claims. 17 U.S.C. § 301(a); *Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 956 (N.D. Ill. 2002). Since Count V seeks to enforce—through a common-law conversion claim—intellectual property rights in purported copyrights held by FMI, it is preempted by federal law.

5

Section 301(a) of the Copyright Act states, "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright . . . are governed exclusively by this title." 17 U.S.C. § 301(a). While CCSI disputes that it has infringed (or that by its actions it would in any way infringe) any FMI copyrights, there can be no reasonable dispute that the precise protections FMI seeks to enforce in Count V are the legal equivalent of those afforded by the copyright laws—a taking and conversion, *e.g.*, copying or reproducing, of copyrighted information is copyright infringement under 17 U.S.C. § 501(a)—and are therefore governed by federal copyright laws to the exclusion of state law remedies.

In *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986), the Seventh Circuit developed a two-part test to determine whether a state law cause of action is preempted by the Copyright Act. First, the court must determine whether the work is fixed within a tangible form and comes within the subject matter of the copyright. *Id.* Second, the court must determine whether the rights under state law are equivalent to the rights protected under Section 106 of the Copyright Act. *Id.* A state law right is equivalent if it is "violated by the exercise of rights set forth in § 106 . . . ." *Higher Gear Group*, 223 F. Supp. 2d at 957.

In this action, FMI apparently seeks to enforce rights in its computer software and, "[i]t is well established that computer software is fixed in a tangible medium of expression and within the subject matter of copyright." *Id.* (citing *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996)). The legislative history of the Copyright Act indicates that computer programs are copyrightable as literary works. *See Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1124-

6

25 (N.D. Cal. 2001). FMI repeatedly alleges and admits that its software and system is copyrighted. Thus, the first condition of preemption is satisfied as a matter of law.

As for the second condition, Section 106 of the Copyright Act protects, among other rights, the right "to reproduce (whether in original or derivative form), distribute, perform and display the copyrighted material." *Higher Gear Group*, 223 F. Supp. 2d at 957. These are the very rights FMI seeks to assert in its claim for conversion, and, in doing so, FMI has repeatedly stated and pled that it is asserting and protecting its *copyright* rights. Specifically, FMI recites in the heading for the above-referenced factual allegations in Paragraphs 60-66 of its Counterclaims, that "[i]n violation of FMI's *Copyright* and Proprietary Rights, Citicorp . . . *Converts* FMI's Information . . . ." (Counterclaims at 14.) Similarly, in Paragraph 60 of its Counterclaims, FMI alleges that Citicorp directed its collection attorneys "to *copy* and move FMI's *copyrighted* and proprietary information relating to the file accounts and contained on the T.U.C.A.N.S. system . . . ." (*Id.* ¶ 60.) And, in Paragraph 63, FMI states that:

> [o]n June 10, 2005, after discovering Citicorp's wrongful actions in violation of FMI's contractual and *copyright* legal rights, FMI sent letters to the collection attorneys in order . . . b) to protect FMI's *copyrighted*, proprietary and confidential information being illegally *converted* and usurped by Citicorp. (*Id.* ¶ 63 (emphasis added).)

Since FMI's purported rights under a conversion claim are the equivalent to its rights under Section 106 of the Copyright Act, the second condition of preemption is also satisfied. With both conditions for preemption satisfied, FMI's Count V should be dismissed.

The facts in this case are similar to those in *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 650 F. Supp. 838 (D.C. Mass. 1986). In *Quincy*, the court determined that plaintiff's conversion claim was preempted because the plaintiff's conversion action sought to protect rights already protected by the Copyright Act. *Id.* at 849. The plaintiff owned and operated the

7

local cable television system. *Id.* at 840. The defendants, three local taverns, used satellite dishes to intercept signals "intended for direct receipt only by [plaintiff]" and exhibited the intercepted programs to their customers without the plaintiff's permission. *Id.* The plaintiff sued the defendants for, *inter alia*, conversion, seeking to protect its rights of distribution, performance, and display. *Id.* at 849.

The *Quincy* court first determined that the plaintiff had a "proprietary interest in the transmissions intercepted and redistributed by the defendants." *Id.* at 848. The court then found that the subject transmissions were copyright subject matter, particularly qualifying as "motion pictures and other audiovisual works." *Id.* at 849. The court went on to note that a conversion claim sought to protect "rights of distribution, performance, and display." *Id.* As such, the court concluded that these rights were equivalent to those rights protected under Section 106 of the Copyright Act ("distribute, perform, and display"), and thus, held that the conversion count was preempted. *Id.* at 850.

In arriving at its decision, the *Quincy* court rejected the plaintiff's contention that defendants had "possession and control of tangible property," which defeated preemption. *Id.* at 850. In particular, the court rejected a case cited by plaintiffs wherein a claim for conversion of a manuscript was not preempted by the Copyright Act. *Id.* (citing *Oddo v. Ries*, 743 F.2d 630 (9th Cir. 1984)). The court reasoned that the *Quincy* plaintiff's case was based on a theory of "unauthorized publication" rather than possession of tangible property. *Id.* The claim asserted was premised on the defendants' unlawful interception of proprietary signals and exhibition of those signals to others without plaintiff's permission. *Id.* Thus, plaintiff failed to plead the existence of any tangible property that would bar preemption. *Id.*

8

Here, it has already been established that FMI's computer software is copyrightable material under the Copyright Act. Moreover, as in *Quincy*, FMI's claim for conversion is based on rights protected by the Copyright Act. FMI claims that CCSI "copied" and "converted" FMI's information and distributed it to other "third-party software systems." (Counterclaims ¶¶ 60, 85-86.) Thus, like the claim in *Quincy*, FMI's claim is based on a theory of unauthorized copying, rather than the possession of *tangible* property. Nowhere does FMI plead that CCSI unlawfully took possession of a manuscript or other printed material but, rather, "information" copied and distributed from the "T.U.C.A.N.S. system." (*Id.* ¶ 87.) In short, this claim is preempted by the Copyright Act. *See also Murray Hill Publications, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 637 (6th Cir. 2001) (holding that claims alleging conversion by the taking, holding, and use for defendant's own benefit of original ideas and concepts in a song, recording the song, and selling the recording were actions that "would each, in and of itself, infringe one of the exclusive rights set out in Section 106" and were therefore preempted by the Copyright Act).

## II.    A Copyright Certificate of Registration Must Be Obtained Prior To Suit.

Although the Copyright Act preempts FMI's claim for conversion, FMI may not pursue a claim of Copyright Infringement because it does not possess a certificate of copyright registration. *See* 17 U.S.C. 411(a) (stating that, except for limited exceptions not applicable here, "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."); *see also Murray Hill Publ'ns*, 264 F.3d at 637. Although FMI has repeatedly recited it is the owner of a valid copyright, it has never identified whether it ever obtained or even applied for copyright registration. Claims related to registered copyrights are brought under that registration and the federal copyright laws, and thus under specific rules and regulations defining

9

the information that can be protected by FMI, by CCSI, or freely used by either. As stated in the legislative history for enactment of Section 301 of the Copyright Act providing for preemption, "the bill prevents the States from protecting [a work] even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify, or because it has fallen into the public domain." H.R. Rep. No. 94-1476, at 131 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5747.

## CONCLUSION

FMI's claims for conversion are, in essence, claims for copyright infringement. Such claims are governed exclusively by the Federal Copyright Act, and, for the reasons explained above, FMI's claims under Count V should be dismissed.

Date: December 7, 2005

Respectfully submitted,

**CITICORP CREDIT SERVICES, INC. (USA), as successor to CITICORP CREDIT SERVICES, INC.**

By: _____

One of Its Attorneys

Richard E. Gottlieb
Dean A. Dickie
Allan J. Sternstein
Renee L. Zipprich
Dykema Gossett PLLC
10 South Wacker Drive - Suite 2300
Chicago, Illinois 60606
(312) 876-1700
Firm No. 42297

CHICAGO\2162018.4
ID\AJST

10

Order                CCG N002-300M-2/24/05 (           )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CCSI

PLAINTIFF

v.

No. 05 CH 9007

IMI INDUSTRIES, INC, el al

### ORDER

This came on for hearing on Defendants Motions for Discovery and For Sanctions, Due Notice thereg having been provided AND The court being advised in The premise,

IT is Therefore ordered as follows:

1. For The reason stated in open court Defendants Motion for Sanctions and TO Conduct Discovery are denied;

2. This matter is set for further status on June 4, 2007 at 10:00 AM without further Notice.

WR

Atty. No.: 40797
Name: Mclean Gossell
Atty. for: PLAINTIFF
Address: 10 South Wacle 2700
City/State/Zip: Chicago, I 60606
Telephone: 312 876 1700

ENTERED:

Dated:

**ENTERED**
JUDGE PHILIP L. BRONSTEIN-1551
APR 02 2007
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge       Judge's No.

**DOROTHY BROWN, CLERK OF TH**   **EXHIBIT B**   **F COOK COUNTY, ILLINOIS**

1

1    IN THE UNITED STATES BANKRUPTCY COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3

4   In re:                        )
                                   ) No. 05 B 3591
5   MICHAEL AND CHRISTINE FRIEDMAN, )
                                   ) Chicago, Illinois
6                                  ) September 28, 2006
                      Debtors.     ) 10:00 a.m.
7

8        TRANSCRIPT OF PROCEEDINGS BEFORE THE
              HONORABLE EUGENE R. WEDOFF
9

10  APPEARANCES:

11
    MR. BRUCE DE'MEDICI
12  on behalf of Horace Fox, the trustee;

13  MS. GWEN GERAGHTY
    MR. GREG JORDAN
14  on behalf of creditor CCSI;

15  MR. DAVID GOLIN
    on behalf of the debtors.
16

17

18

19

20

21

22

23

24

25

**EXHIBIT**

C

2

1          THE CLERK:  Michael and Christine Friedman,
2    05 B 3591.
3          THE COURT:  Okay.  Have you reached
4    agreement as to the scope of documents to be
5    produced?
6          MR. GOLIN:  No, we have not, Your Honor.
7    Has Your Honor seen the objection that we filed?
8          THE COURT:  Let me just say the reason why
9    I believe there is a basis for this reopened case to
10   go forward is the potential that the debtor
11   misrepresented the value of the stock.  If the
12   corporation has a substantial counterclaim here,
13   which I gather is what's being asserted in the state
14   court action, and that wasn't disclosed in the
15   course of the bankruptcy case, there would be a
16   potential for the case to be reopened and the asset
17   administered.  And there might even be a potential
18   for a determination that the debtor had
19   misrepresented material facts such as to support a
20   conclusion that the discharge had been procured by
21   fraud and it would be subject to revocation.  Those
22   are the bases that I'm aware of for this case to be
23   here.  That bases should inform the scope of a
24   discovery request.
25         MR. GOLIN:  And, Your Honor, I completely

1   agree.  However, under the circumstances of this
2   case, that discovery should be undertaken by the
3   bankruptcy trustee at this time.  At this point in
4   time, Your Honor, there is only one creditor,
5   alleged creditor in this case.  That is Citicorp.
6   Citicorp is the only one who has filed a claim.
7   That claim is vehemently disputed not only as to
8   liability, but even whether there is a pre-petition
9   claim.  That claim as to pre-petition liability
10  wasn't asserted initially in the state court action.
11  They filed a proof of claim in this case to get
12  their foot in the door.
13              Citicorp and FMI are in a heated
14  dispute in state court right now.  There is no doubt
15  about that.  Mr. Friedman has a stock interest in
16  FMI.  There is no doubt about that.  But --
17              THE COURT:  And he's got a big
18  counterclaim, right?
19              MR. GOLIN:  And FMI has a counterclaim.
20              THE COURT:  Yes.
21              MR. GOLIN:  But here is the -- here is
22  why -- it's not even a veiled attempt.  It's smoke
23  and mirrors.  If this counterclaim has value, Your
24  Honor, if they're successful, then based upon
25  alleged breach of the vendor services agreement, how

4

1   can Citicorp have a claim against Michael Friedman
2   individually for alleged misrepresentation or alter
3   ego with respect to that vendor services agreement?
4   They can't have it both ways.

5              Until the trustee determines -- and
6   remember how this case is in context. Right now
7   there are no assets in the estate. The trustee
8   either has to determine, number one, that there were
9   assets that were disclosed. We've already shown to
10  the trustee how the three interests that Citicorp
11  told the trustee that Mr. Friedman had an interest
12  in, this Rotunda, Inc., the Friedman Fund, the
13  Friedman Wexler firm, all false.

14             The other basis was this alleged
15  failure to properly disclose to the trustee the
16  value of the counterclaim. If Citicorp goes forward
17  with all of this disclosure as the single disputed
18  creditor and ultimately is determined that there is
19  no basis for the trustee to bring that back --

20             THE COURT: What you're saying is to the
21  extent that the asset has value, Citicorp will
22  necessarily not have a valid claim.

23             MR. GOLIN: Yes.

24             THE COURT: Okay. So?

25             MR. GOLIN: And that heightens the problem

5

1    here and why in this context -- I mean, if this
2    were --
3              THE COURT:  So Citibank and the trustee are
4    adverse, is what you're saying.
5              MR. GOLIN:  To an extent, yes.
6              THE COURT:  Because to the extent there is
7    an asset in the estate, Citibank's claim is
8    necessarily invalid.  To the extent they have a
9    valid claim, then there is no -- then it's a no
10   asset case.
11             MR. GOLIN:  That's correct.  And remember
12   the purpose for reopening this case is the trustee
13   told us Citicorp is going to make us an offer to buy
14   the stock interest and we're going to come in on a
15   motion to sell.  There is no legitimate purpose for
16   that.  Citicorp is the only potential creditor.
17   Alleged, at best, they would be buying and paying
18   themselves.  This case cries out at this time --
19   first of all, we think for the motion to abstain and
20   dismiss, it's clear falls into the paradigm that the
21   court should abstain and it shouldn't even be heard.
22             But we're more than willing at this
23   point in time to sit down, we have been, with the
24   trustee with the protective order so that the
25   trustee is comfortable that there was no

6

1    misrepresentation --

2           THE COURT:  Okay.  Where is the trustee?

3    Oh, here is the trustee a little late.

4           MR. DE'MEDICI:  Good morning.  Bruce

5    de'Medici on behalf of Horace Fox, the trustee.

6           THE COURT:  Okay.  The argument is being

7    made, Mr. de'Medici, that the discovery that's being

8    sought here is only properly pursued by the trustee.

9    And the rationale that Mr. Golin is giving me, and I

10   think it has at least some facial attractiveness, is

11   that to the extent Citibank has a legitimate claim

12   in this case, that is to say, they're owed something

13   to FMI, whatever, they are owed by FMI, and the

14   debtor something more than what FMI is owed by them

15   and the debtor is owed by them in a counterclaim,

16   they -- there is a no asset case here.  There is no

17   assets to be administered because the only asset

18   that we've seen that allegedly wasn't adequately

19   disclosed by the debtor is the stock value of FMI.

20          MR. DE'MEDICI:  From our perspective, it

21   would depend on the debt structure of FMI.  If FMI

22   truly has a $120 million counterclaim against

23   Citicorp -- and as yet I don't know if that

24   counterclaim is valid or not.  I've read it.  I

25   don't have documents yet for me to be able to say if

1    it's a good or a bad claim.  But to the extent that
2    FM Industries perhaps has -- a counterclaim against
3    Citicorp, and then depending on the debt structure
4    of FM Industries, there may be money that could be
5    recovered for the benefit of the shareholders.  And
6    we are -- we have suggestions that Mr. Friedman is
7    the shareholder of FM Industries.  We cannot be sure
8    of that.  Mr. Golin has represented outside of my
9    presence and --

10          THE COURT:  Look, the argument here really
11   isn't with the trustee.  I think Mr. Golin has
12   acknowledged, and even if he didn't I would rule,
13   that the trustee has standing here.  There is an
14   allegation of a failure to disclose the true value
15   of the FMI, is it, stock.

16          MR. DE'MEDICI:  FM, period, Industries,
17   Inc.

18          THE COURT:  Okay.  FM, period, Industries.
19   "FMI" will do.  There is an allegation of a failure
20   to disclose the true value of the FMI stock.  And
21   if, in fact, FMI has a $120 million counterclaim, it
22   would appear that it's not valueless.

23               If there is this huge counterclaim,
24   though, against Citibank and it's valid, Citibank
25   would appear not to have a valid claim against the

8

1    debtor.  And if Citibank doesn't have a valid
2    pre-petition claim against the debtor, then they
3    should not be pursuing this discovery.  It would be,
4    as Mr. Golin is arguing, that they're simply
5    litigating their state court matter in the
6    bankruptcy case, not an appropriate use of
7    bankruptcy.

8                   The trustee unquestionably has a valid
9    reason to find out whether this is a counterclaim
10   that should have been disclosed, whether the debtor
11   willfully failed to disclose it, whether there are
12   grounds for a revocation of discharge, whether there
13   is grounds for the administration of an asset.  But
14   that's separate from the question of whether
15   Citibank ought to be using this 2004 process to
16   advance its position in the state court, or whether
17   it should simply be using the state court procedures
18   to do that.

19                  MS. GERAGHTY:  Your Honor, can I clarify on
20   one point as to the issue of the assets which were
21   not disclosed by the debtor?  It is not simply a
22   question of the nondisclosure of the counterclaim,
23   which is a significant failure.  There is also --
24                  THE COURT:  Wait, wait.  The debtor doesn't
25   own the counterclaim.  FMI owns the counterclaim.

9

1    So the only thing that could be a failure to
2    disclose in the bankruptcy is the value of the FMI
3    stock.
4            MS. GERAGHTY:  It's my understanding that
5    one of the issues in this bankruptcy is the failure
6    to disclose assets which the debtor had.  The debtor
7    has made admissions against interests regarding
8    valuable cars, real estate, luxury boats, an
9    interest in Friedman & Wexler.  All of these have
10   been admission made.  None of them appear on the
11   disclosures.  There has also been -- he's also --
12            THE COURT:  Fine.
13            MS. GERAGHTY:  -- claimed a copyright.
14            THE COURT:  It has to do, if anything --
15   well, first of all, none of that is alleged in the
16   motion to reopen or, as far as I know, in the motion
17   for a 2004 examination.
18            MS. GERAGHTY:  That is part of the rider of
19   what is being sought to be --
20            THE COURT:  Well, it's in your document
21   request.  It wasn't in the motion.
22            MR. JORDAN:  It's in our proof of claim,
23   Your Honor.
24            MS. GERAGHTY:  It's part of the proof of
25   claim.

1          THE COURT:  Part of your proof of claim
2    that the debtor failed to disclose assets in the
3    bankruptcy?  What's that have to do with your claim?
4          MS. GERAGHTY:  Well, the copyright issue
5    was raised.
6          THE COURT:  See, the problem is --
7          MS. GERAGHTY:  One of the --
8          THE COURT:  -- you're operating across
9    purposes.  To the extent that you're saying that the
10   debtor has an asset in a claim against your client,
11   you're arguing that your client doesn't have a net
12   claim against the debtor, nothing to pursue in this
13   bankruptcy case.  It really is at this point an
14   issue for the trustee to take up.
15          Now, Mr. Golin, you've asserted that
16   you would be willing to negotiate with the trustee a
17   reasonable 2004 examination with a reasonable
18   document request.
19          MR. GOLIN:  Yes, and a reasonable
20   protective order so that until the trustee makes a
21   determination in --
22          THE COURT:  Okay.  I'm inclined to agree
23   with that position.  I think that there should be
24   that kind of a negotiation.  The trustee,
25   Mr. Golin's client ought to -- or the Friedmans

11

1    ought to arrive at what would be a reasonable

2    examination.  And I think that's a matter that can

3    be resolved independent of the Section 305 motion

4    that's set for a hearing in a couple of weeks.

5           MR. DE'MEDICI:  I'd like to suggest that as

6    an approach --

7                    I'm sorry.  Were you going to say

8    something?

9           MR. JORDAN:  Your Honor, you know, I think

10   that there is a -- you know, we're kind of getting

11   away from reality here.  We have a claim personal to

12   Michael Friedman that we asserted relating to

13   misrepresentation and, in addition, relating to the

14   alter ego.  But we have a claim.  It's not been

15   objected to.  He misrepresented facts to us.  We

16   know that he has certain assets.  There are a lot of

17   questions with regard to it.  We have a claim.  It's

18   not been objected to.  There is talk about objecting

19   to it.  There is no -- nothing going on.  We may be

20   the only creditor, but I don't quite understand why

21   if we're a creditor that we're shut out.  What we

22   did in advance of this hearing was reach out --

23          THE COURT:  Okay.  Let me tell you -- just

24   explain, because I don't want to take up any more

25   time on this.  Insofar as your client is concerned,

12

1   there is considerable potential merit to the 305

2   motion.  It may be very appropriate to have this

3   case not go forward to the extent it's basically an

4   adjunct to litigation that's going on in state

5   court.

6                   Whether it goes forward with respect

7   to your client depends largely on whether there is a

8   net amount owing from Mr. Friedman to your client.

9   And to the extent that the basis for the case going

10  forward is an asset that consists of a claim against

11  your client, you're not in a good position to argue

12  against a Section 305 motion.  The trustee is in a

13  very different position in that respect.

14                  So what I'm going to do is to allow

15  the trustee to take this 2004 exam with a reasonable

16  document request.  If you have information that you

17  think would be valuable to the trustee, you can

18  certainly supply that to the trustee, and I'm sure

19  the trustee would be happy to get your information.

20                  But the point I'm trying to make is

21  that your clients' standing right now is dubious in

22  light of the state court litigation that's going on,

23  and in light of the potential for this bankruptcy

24  case being reopened by your client primarily as an

25  adjunct to that state court litigation.  I'm going

13

1   to be much more interested in having the trustee's
2   position espoused here. The trustee may very well
3   agree with you, and that's fine. But that's how
4   we're going to leave this until I hear the Section
5   305. If the --
6               MS. GERAGHTY: Your --
7               MR. JORDAN: Well --
8               MS. GERAGHTY: -- Honor, can I make a --
9               MR. JORDAN: -- Your Honor --
10              MS. GERAGHTY: Can I --
11              MR. JORDAN: -- the one thing I want to
12  make -- to understand is because we actually brought
13  the trustee into our 2004 -- the trustee agreed to
14  join our motion, the 2004 motion, so we're really
15  proceeding on both of our motions today. He was
16  late, and we kind of got ahead of that.
17              But, more importantly, regardless of
18  anything else, we are a creditor. And I don't quite
19  understand how we can be shut out of the process and
20  yet respond to a 305 motion so to say, well, we're
21  not going to let you have any facts --
22              THE COURT: You can respond to the 305
23  motion to address the main point that's been raised
24  by Mr. Golin, that the bankruptcy case, insofar as
25  it involves your client, is nothing more than an

14

1   attempt to gain leverage in the state court action.
2   And I want to find out what your response is to that
3   basic argument that's being made under 305. And you
4   can make your response to that argument based on
5   whatever facts you're aware of right now, and
6   apparently you're aware of quite a bit. And to the
7   extent that the trustee develops additional facts in
8   the 2004, as I said the last time we were in court,
9   you're welcome to aver to that. But I would expect
10  that you have a basis right now for opposing the
11  Section 305 motion, and I'll hear that in your
12  brief.
13          MS. GERAGHTY: Your --
14          MR. GOLIN: Thank you, Judge.
15          THE COURT: And I'm not going to take up
16  any more time. We're dealing with matters that are
17  completely discretionary with the court. I'm
18  exercising my discretion in what I think is the most
19  appropriate fashion. We've got a schedule in place,
20  and I expect it to be adhered to. If there is a
21  problem in the trustee and the debtors reaching an
22  agreement as to the scope of the document request, I
23  would expect you to comment back on a further
24  motion. But, otherwise, I think we're taken care of
25  right now.

15

1          MS. GERAGHTY:  Your Honor, the

2     counterclaims --

3          MR. GOLIN:  We will meet with the trustee

4     and work out a time and a place.  I think we can

5     even keep that October 9 date.  I will also work out

6     with the trustee a reasonable protective order that

7     we will submit to chambers with respect to the

8     examination.

9          THE COURT:  Okay.  If that's --

10          MS. GERAGHTY:  Your Honor --

11          THE COURT:  Then what I'll look for is a

12     draft order by Thursday of next week that

13     incorporates that protective order.

14          MR. GOLIN:  Thank you, Your Honor.

15          THE COURT:  No more argument today.

16          MR. DE'MEDICI:  Thank you.

17
                    (Which were all the proceedings
18                    had in the above-entitled cause,
                    September 28, 2006.)
19

20    I, GARY SCHNEIDER, CSR, RPR, DO HEREBY CERTIFY THAT
      THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF
21    PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE.

22

23

24

25