IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FM INDUSTRIES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 07 C 1794 |
| CITICORP CREDIT SERVICES, INC., | ) |
| CITIGROUP, INC., CITIBANK (SOUTH | ) Suzanne B. Conlon, Judge |
| DAKOTA), N.A., LAW OFFICE OF ROSS | ) |
| GELFAND, LLC, and JAMES D. CORTEZ, | ) |
| ATTORNEY AT LAW, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

FM Industries, Inc. ("FMI") brings this action against Citicorp Credit Services, Inc.

("CCSI"), Citigroup, Inc., Citibank (South Dakota), N.A., and two debt-collection attorneys,

Ross Gelfand ("Gelfand") and James D. Cortez, alleging copyright infringement (Count I) and

breach of contract (Counts II and III). FMI moves for partial summary judgment against Gelfand

on Counts I and III.

## BACKGROUND

Gelfand performed legal debt-collection services for CCSI. Gelfand Response to FMI

Facts, Dkt. No. 320 at ¶ 6. CCSI required Gelfand to use The Ultimate Debt Collection and

Network Software ("TUCANS") to manage Gelfand's CCSI-debtor accounts. *Id.* TUCANS is a

computer program that organizes and displays debt-collection data, including debtors' names and

addresses, the amount of their debts, and notes regarding collection attempts, in a series of fields

and windows. Friedman Aff., Dkt. No. 282-2 at ¶¶ 2, 25. TUCANS also facilitates transmission

of data between a debt collector and its attorneys. *Id.* FMI claims it owns the TUCANS copyright.

In 2001, Gelfand and FMI executed a licensing agreement allowing Gelfand to use TUCANS in its work for CCSI. Licensing Agreement, Dkt. No. 282-6. The agreement allowed FMI to terminate the license 30 days after providing Gelfand written notice. *Id.* at ¶ 4(C)(1). FMI President Michael Friedman sent notice of termination to Gelfand on June 10, 2005. Termination Letter, Dkt. No. 282-7. Gelfand confirmed receipt of the notice and acknowledged its TUCANS license would expire on July 10, 2005. Termination Confirmation Letter, Dkt. No. 282-8. Gelfand admits it nevertheless accessed CCSI data using TUCANS after July 10, 2005. Gelfand Admissions, Dkt. No. 282-25 at 10. FMI argues this post-termination date use constituted a breach of the parties' licensing agreement and infringed its TUCANS copyright.

The parties dispute whether FMI actually owns the TUCANS copyright. Initially, FM Ware Industries, Inc. ("FM Ware") owned TUCANS. Friedman Aff., Dkt. No. 282-2 at ¶ 27. FMI claims it received the TUCANS copyright from FM Ware in January 2001 via a written transfer agreement. Mem. in Support at 2-3; Friedman Aff., Dkt. No. 282-2 at ¶ 30. Friedman was president of both FMI and FM Ware at that time and states he signed the transfer agreement on FM Ware's behalf. Friedman Aff., Dkt. No. 282-2 at ¶ 30. FMI's Secretary in 2001, Michael Dimand, attests he drafted this agreement (Dimand Aff., Dkt. No. 282-3 at ¶¶ 1, 4-5); but Dimand never saw an executed copy of the agreement (Dimand Dep., Dkt. No. 319-6 at 37). Friedman attests he lost the alleged transfer agreement, and FMI has failed to produce the document. Friedman Aff., Dkt. No. 282-2 at ¶ 31.

2

Dimand has no recollection of the alleged transfer agreement's details independent of minutes he prepared of an April 24, 2001 FMI board meeting. Dimand Dep., Dkt. No. 319-6 at 52; Dimand Aff., Dkt. No. 282-3 at ¶ 8. But the board minutes do not describe the alleged January 2001 transfer agreement; they describe the general terms of a yet-to-be-drafted license and purchase agreement by which FM Ware would transfer its TUCANS rights to FMI. FMI Board Minutes, Dkt. No. 85-8; Dimand Dep., Dkt. No. 319-6 at 56. FMI does not assert the agreement contemplated at the April 24, 2001 board meeting was ever consummated; Dimand attests he later deemed the transfer agreement unnecessary in light of the January 2001 agreement. Dimand Aff., Dkt. No. 282-3 at ¶ 9.

When asked during a 2006 deposition whether FMI had "purchase[d] the source code from FM Ware," Friedman replied "I don't know if there's a true document that says that . . . I don't think there was any specific purchase in that regard, except for the minutes that said its being transferred to [FMI]." FMI Responses to Gelfand Facts, Dkt. No. 329 at ¶ 6.

## DISCUSSION

### I. Legal Standards

A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions."

3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When a court weighs a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*

## II.    Analysis

### a.    Copyright Infringement

A copyright owner has the exclusive right to reproduce the copyrighted work. 17 U.S.C. § 106(1). A person who violates that right is an infringer. 17 U.S.C. § 501(a). When a computer user launches a software program, his computer automatically copies the program and loads it into memory. *ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F.Supp. 1310, 1332 (N.D. Ill. 1990) (Marovich, J.). Launching a copyrighted software program may thus constitute infringing reproduction. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 235 (7th Cir. 1995).

FMI contends Gelfand infringed on its TUCANS copyright by launching the program after termination of the licensing agreement. To prevail on its infringement claim, FMI must prove it owned a valid copyright in TUCANS at the time of the alleged infringement. *Feist Publications, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 361 (1994). Gelfand argues that under 17 U.S.C. § 204, FMI cannot establish copyright ownership without proving the existence of the alleged January 2001 transfer agreement. FMI responds Gelfand cannot invoke § 204 to invalidate the alleged transfer agreement because Gelfand was not a party to that agreement. Mem. in Support at 4 (citing *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592-93 (7th Cir. 2003)).

Regardless of § 204's applicability, FMI's own factual allegations require proof of the existence of the January 2001 transfer agreement. FMI alleges it owns the TUCANS copyright

4

by virtue of that instrument. Mem. in Support at 2-3; Friedman Aff., Dkt. No. 282-2 at ¶ 30.
FMI fails to offer the transfer agreement to establish its ownership. Friedman and Dimand attest
it existed, but FMI has failed to produce it. Gelfand cites evidence suggesting the January 2001
agreement is chimerical. The April 24, 2001 FMI board meeting minutes suggest FM Ware's
transfer of intellectual property to FMI had yet to occur and Friedman was unsure whether a "true
document" effecting FMI's purchase of FM Ware's source code ever existed. FMI's ownership
of the TUCANS copyright is a genuine issue of material fact precluding summary judgement.

FMI argues Gelfand is estopped from contesting FMI's copyright ownership because
Gelfand acknowledged FMI's TUCANS ownership in the parties' licensing agreement. A
provision in a copyright licensing agreement explicitly forbidding the licensee from challenging
the validity of the licensor's copyright is generally enforceable. *Saturday Evening Post Co. v.
Rumbleseat Press, Inc.*, 816 F.2d 1191, 1200 (7th Cir. 1987). But the FMI-Gelfand licensing
agreement did not contain a no-contest clause, and broader application of the licensee estoppel
doctrine is disfavored in copyright cases. *See* 3-10 Melville B. Nimmer & David Nimmer,
*Nimmer on Copyright* § 10.15 (2007); *Original Appalachian Artworks, Inc. v. May Dept. Stores
Co.*, No. 86 C 882, 1986 WL 8448 (N.D. Ill. July 29, 1986) (Shadur, J.). Gelfand is not estopped
from challenging FMI's ownership of the TUCANS copyright.

### b.     Breach of Contract

To prevail on its breach of contract claim under Illinois law, FMI must prove it suffered
damages as a result of Gelfand's alleged breach. *TAS Distributing Co. v. Cummins Engine Co.*,
491 F.3d 625, 631 (7th Cir. 2007) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814
N.E.2d 960, 967 (Ill. Ct. App. 2004)). FMI contends, without factual support, that it suffered

damages "in the form of lost licensing fees and diminishment of the value and confidentiality of its intellectual property." Mem. in Support, Dkt. No. 281 at 10.

A summary judgment movant must establish there are no genuine issues of material fact and that it is entitled to judgment as a matter of law by citing record evidence. *Squibb v. Memorial Medical Center*, 497 F.3d 775, 780 (7th Cir. 2007); Fed.R.Civ.Pro. 56(c). FMI fails to support its assertions regarding damages with any record citation. Summary judgment on FMI's breach of contract claim is inappropriate.

ENTER:

Suzanne B. Conlon
United States District Judge

January 14, 2008

6