IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FM INDUSTRIES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 07 C 1794 |
| CITICORP CREDIT SERVICES, INC., | ) |
| CITIGROUP, INC., CITIBANK (SOUTH | ) Suzanne B. Conlon, Judge |
| DAKOTA), N.A., and LAW OFFICE OF | ) |
| ROSS GELFAND, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

FM Industries, Inc. ("FMI") brings this action against Citicorp Credit Services, Inc.

("CCSI"), Citigroup, Inc. ("Citigroup"), Citibank (South Dakota), N.A. ("Citibank")

(collectively, "Citi defendants"), and Law Office of Ross Gelfand, LLC ("Gelfand") alleging

copyright infringement (Count I) and breach of contract (Counts II and III). Gelfand moves for

summary judgment on Counts I and III. Citi defendants filed three motions for summary

judgment: (1) Citigroup and Citibank move for summary judgment on Counts I and II; (2) all

Citi defendants move for summary judgment on Counts I and II; and (3) all Citi defendants,

joined by Gelfand, move for summary judgment on the issue of damages and attorney fees.

### BACKGROUND

**I.    Local Rule 56.1**

With its summary judgment brief, a movant must submit a statement of material facts

consisting exclusively of short, numbered paragraphs supported by specific evidentiary

references. N.D. Ill. L.R. 56.1(a). The nonmovant must file a response to this statement. N.D. Ill. L.R. 56.1(b)(3). If the nonmovant disagrees with any fact in its opponent's Rule 56.1 statement, it must respond with a "specific reference[]" to evidence that provides a basis for its disagreement. N.D. Ill. L.R. 56.1(b)(3)(B).

Rule 56.1 requires *references* to evidence; this implies litigants should not inflate their statements of fact *with the evidence itself.* The rule calls for a statement of material *facts*; this implies a Rule 56.1 statement is not a forum for legal argument or factual characterizations. *See Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000) (Castillo, J.). In violation of Rule 56.1, FMI repeatedly pastes large chunks of deposition testimony into its responses to Gelfand's Rule 56.1 statement (*see, e.g.,* FMI Response to Gelfand Facts, Dkt. No. 392, at ¶¶ 10, 27, 31) and engages in improper factual characterizations and argument (*see, e.g., id.* at ¶¶ 15, 16, 18, 31; FMI Facts, Dkt No. 391, at 9, 13). Gelfand's transgressions are less flagrant but include improper factual and legal argument (*see, e.g.,* Gelfand Response to FMI Facts, Dkt. No. 394, ¶¶ 2, 3). The court considers the parties' Rule 56.1 statements only to the extent they comply with Rule 56.1's requirements.

FMI's failures to comply with Rule 56.1 are even more egregious in its responses to Citi defendants' motions. Summary judgment exists to weed out factually insufficient claims before trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). To protect claims attacked on summary judgment, a nonmovant must proffer evidence to support them; if the nonmovant fails to carry that burden, "the court must enter summary judgment against [it]." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994); *Celotex*, 477 U.S. at 322. If a nonmovant wants the court to consider any facts not included in its opponent's Rule 56.1

2

statement, it must enumerate them in its own, supplemental Rule 56.1 statement. N.D. Ill. L.R. 56.1(b)(3)(C); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (plaintiff opposing summary judgment must include facts not set forth in the movant's papers in its own Rule 56.1 statement); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (Castillo, J.) ("supporting documents submitted with a motion that are not referred to in the statement of facts will be ignored."). Courts disregard evidence submitted in any other form. *Smith*, 321 F.3d at 683; *Malec*, 191 F.R.D. at 583. FMI failed to file a single supplemental Rule 56.1 statement with its responses to Citi defendants' motions; the court disregards evidence FMI attempts to introduce by other means.

FMI failed to support most of its responses to Citi defendants' Rule 56.1 statements with specific references to evidence as required by Rule 56.1(b)(3)(B). Indeed, FMI failed to file *any* response to Citi defendants' Rule 56.1 statement in support of its summary judgment motion on Counts I and II. All Citi defendants' properly supported facts that FMI failed to contest with evidentiary references are admitted. *See Smith*, 321 F.3d at 683 (failure to respond properly to facts enumerated in opponent's Rule 56.1 statement results in the admission of those facts). FMI's operative admissions differ for each of defendants' four motions. Therefore, a general factual background is provided in the next section; motion-specific admissions are noted in the discussion of the merits.

**II.    Facts**

FMI claims it owns the copyright in The Ultimate Debt Collection and Networking Software ("TUCANS"). TUCANS is a computer program that organizes and displays debt collection data, including debtors' names and addresses, the amount of their debts, and notes

3

regarding collection attempts, in a series of fields and windows. TUCANS also facilitates transmission of data between a debt collector and its attorneys.

CCSI collects credit-card debt owed to its parent, Citigroup. Citigroup Ans., Dkt No. 331, at ¶ 4; Citi Facts, Dkt. No. 351, at ¶4. In fulfilling this role, CCSI retains and supervises outside collection attorneys, like Gelfand. Citi Facts, Dkt. No. 351, at ¶4. In May 2001, CCSI entered into a vendor service agreement with FMI. CCSI Ans., Dkt. No. 228, at ¶ 17; Vendor Service Agreement, Dkt. No. 216-2, at 10; Mem in Support, Dkt. No. 352, at 2. The vendor service agreement gave CCSI the right to use TUCANS to share debtor data with its collection attorneys in exchange for a fee. Vendor Service Agreement, Dkt. No. 216-2, at 5. The vendor service agreement required CCSI's attorneys to sign TUCANS licensing agreements. CCSI Ans., Dkt. No. 228, at ¶ 22. Gelfand executed a TUCANS licensing agreement in 2001. Licensing Agreement, Dkt. No. 282-6.

To share debtor data with Gelfand through TUCANS, CCSI submitted that data to FMI. Sep. 26, 2007 Friedman Dep., Dkt. No. 319-4, at 7. FMI then created a TUCANS file containing the data and forwarded it to Gelfand. *Id.* at 8. When Gelfand accessed the file through TUCANS, the data would be automatically loaded into a local database. *Id.* at 12. Gelfand could then update the file as appropriate, sending new information about the debtor's account to CCSI via FMI. *Id.* at 25-26. Accessing the raw data in the local database without using TUCANS is difficult (Levy Dep., Dkt. No. 319-12 78-79), but not impossible (Gelfand Facts, Dkt. No. 337, at ¶¶ 27-28).

The vendor service agreement expired on September 5, 2003. Gillard Letter, Dkt. No. 216-7; CCSI Ans., Dkt. No. 228, at ¶ 61. Two days before the vendor service agreement expired,

4

CCSI's Senior Vice President and Director of Recovery, John Gillard, sent a letter to FMI president Michael Friedman confirming an oral agreement ("provisional agreement") allowing CCSI to use TUCANS for an unspecified time "to facilitate migration of Citi's process to a different system." Gillard Letter, Dkt. No. 216-7; CCSI Ans.; Dkt. No. 228, at ¶ 61; Citigroup Ans., Dkt No. 331, at ¶ 8. The letter specified that "the terms of the [vendor service agreement] w[ould] no longer be in effect following September 5, 2003," but that CCSI would continue to pay FMI at the rate established in the vendor service agreement "for any accounts processed on Tucans [sic]." Gillard Letter, Dkt. No. 216-7. FMI alleges CCSI breached the provisional agreement by transferring debtor information from TUCANS to a different system and collecting debts with that information without paying FMI a fee.

Around June 2005, CCSI stopped using TUCANS and instructed its collection attorneys to do the same. CCSI Ans., Dkt. No. 228, at ¶ 31; Citi Facts, Dkt. No. 355, at ¶ 10. Gelfand's TUCANS license expired on July 10, 2005. Termination Confirmation Letter, Dkt. No. 282-8. Gelfand nevertheless accessed CCSI data using TUCANS after the termination date. Gelfand Admissions, Dkt. No. 282-25, at 10. FMI argues this post-termination use infringed its TUCANS copyright and alleges CCSI and Citigroup induced and participated in Gelfand's infringement.

The parties dispute whether FMI actually owns the TUCANS copyright. Initially, FM Ware Industries, Inc. ("FM Ware") owned TUCANS. Friedman Aff., Dkt. No. 282-2, at ¶ 27. FMI rests its ownership claim on a written January 2001 transfer agreement purportedly transferring FM Ware's TUCANS copyright to FMI. FMI Response to Gelfand Facts, Dkt. No. 392, at ¶ 15; Friedman Aff., Dkt. No. 282-2, at ¶ 30. Michael Friedman was president of both

5

FMI and FM Ware in 2001 and attests he signed the agreement on FM Ware's behalf. Friedman

Aff., Dkt. No. 282-2, at ¶ 30. FMI's secretary in 2001, Michael Dimand, attests he drafted the

agreement. Dimand Aff., Dkt. No. 282-3, at ¶¶ 1, 4-5. FMI has failed to produce the transfer

agreement. Friedman attests he lost it. Friedman Aff., Dkt. No. 282-2, at ¶ 31.

Minutes of an FMI board meeting on April 24, 2001 describe the general terms of a

proposed but undrafted license and purchase agreement transferring FM Ware's TUCANS rights

to FMI. FMI Board Minutes, Dkt. No. 85-8; Dimand Dep., Dkt. No. 319-6, at 56. Dimand

attests he later deemed a formal license and purchase agreement unnecessary because the January

2001 agreement had already effected the transfer. Dimand Aff., Dkt. No. 282-3, at ¶ 9. When

asked during a 2006 deposition whether FMI had "purchase[d] the source code from FM Ware,"

Friedman replied, "I don't know if there's a true document that says that . . . I don't think there

was any specific purchase in that regard, except for the minutes that said its being transferred to

[FMI]." FMI Responses to Gelfand Facts, Dkt. No. 329, at ¶ 6.

## DISCUSSION

### I.    Legal Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.

56(c). A court must not make credibility determinations on summary judgment. *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must assume the truth of the nonmovant's

evidence, drawing reasonable inferences in the nonmovant's favor. *Id.* But faced with a properly

supported summary judgment motion against its claims, a plaintiff must affirmatively demonstrate

6

the existence of a genuine issue of material fact precluding an order in the movant's favor. *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000).

## II.     Analysis

### A.     Copyright Infringement - Gelfand

#### 1.     Copyright Ownership

FMI contends Gelfand infringed its TUCANS copyright by using the program after termination of the licensing agreement. To prevail on its infringement claim, FMI must first prove it owned a valid copyright in TUCANS at the time of the alleged infringement. *Feist Publications, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 361 (1994). FMI asserts it owns the TUCANS copyright by virtue of the missing January 2001 transfer agreement. FMI Response to Gelfand Facts, Dkt. No. 392, at ¶ 15; Friedman Aff., Dkt. No. 282-2, at ¶ 30. Gelfand argues the transfer agreement is chimerical, noting that the April 24, 2001 FMI board meeting minutes indicate FM Ware's transfer of intellectual property to FMI had yet to occur and that Friedman testified he was unsure whether there was a "true document" effecting FMI's purchase of "the source code" from FM Ware.

FMI relies on the Friedman and Dimand affidavits and deposition testimony to prove the transfer agreement's existence. Drawing all reasonable inferences in FMI's favor, and refraining from weighing the evidence or determining witness credibility, the court cannot conclude Friedman's attestation that he signed the January 2001 transfer agreement contradicts his 2006 testimony that he "d[id]n't know if there [was] a true document that says" FMI purchased "the source code" from FM Ware. "[T]he source code" at issue in Friedman's 2006 deposition is not definitively identified as either the source code for TUCANS or the TUCANS copyright. And "true document" is an ambiguous term that may or may not refer to a written contract. In light of these ambiguities and

7

Dimand's attestations (Dimand Aff., Dkt. No. 282-3, at ¶¶ 5, 9), the existence of the transfer agreement is a genuine issue of material fact.

Gelfand raises other arguments against FMI's claim of copyright ownership. First, Gelfand argues the best evidence rule bars the evidence FMI proffers to prove the existence of the lost transfer agreement. But the best evidence rule only limits evidence regarding a document's contents, not its existence. Fed.R.Evid. 1002, 1004. The Federal Rules of Evidence explicitly distinguish between questions regarding a document's contents and questions regarding its existence, reserving the latter for the fact-finder. Fed.R.Evid. 1008. The existence of the January 2001 transfer agreement is a disputed issue of material fact.

Relying on *qad, Inc. v. ALN Associates, Inc.*, 770 F. Supp. 1261 (N.D. Ill. 1991) (Shadur, J.), Gelfand argues the court should refuse to enforce the TUCANS copyright because FMI made misstatements in its copyright registration certificates. "[I]nadvertent mistakes on registration certificates do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement." *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003) (quoting *Urantia Foundation v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997)) (ellipsis omitted). Gelfand does not allege reliance on any of the errors it cites; and Gelfand fails to establish that those errors were motivated by fraudulent intent. Whether FMI, like the plaintiff in *qad*, improperly claimed a copyright over material it did not own depends on the disputed existence of the January 2001 transfer agreement.

8

Finally, Gelfand argues the trustee of Friedman's bankruptcy estate now owns the TUCANS copyright because FM Ware never transferred TUCANS to FMI. Mem. in Support at 9-10. But this argument also turns on the disputed existence of the 2001 transfer agreement.

## 2. Infringement

To prevail on its infringement claim, FMI must prove Gelfand improperly copied original elements of TUCANS. *Feist*, 499 U.S. at 361. Gelfand argues it did not unlawfully copy TUCANS because Gelfand initially installed the software onto its computers with FMI's consent. This argument is unavailing; a user reproduces a program stored in his computer's hard drive merely by launching that program, thereby causing the computer to copy it to Random Access Memory. *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993); 2-8 Nimmer on Copyright § 8.08 (2007). Indeed, 17 U.S.C. § 117, which Gelfand raises in another section of its argument, impliedly acknowledges this fact by allowing the "owner" of a copy of a computer program to reproduce the program if reproduction is "an essential step in the *utilization* of the computer program." 17 U.S.C. § 117(a) (emphasis added). It is undisputed that Gelfand launched TUCANS after termination of its license, when Gelfand was neither a TUCANS owner or licensee. Gelfand Responses to Requests to Admit, Dkt. No. 282-25, at 10. Gelfand thus made TUCANS copies not protected by § 117's safe harbor.

Gelfand further contends that because it only used TUCANS to extract data, the copying concomitant with its use is excused under *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640 (7th Cir. 2003). *Assessment Technologies* held reproduction of a computer program is not infringing if it is "the only way" to access uncopyrightable data. *Assessment Tech.*, 350 F.3d at 645. But Gelfand admits it could have accessed the relevant data without using TUCANS;

9

Gelfand fails to satisfy the conditions for fair use outlined in *Assessment Technologies*. Gelfand asserts a general fair use argument in a footnote (Mem. in Support at 6, n. 2), but fails to mention the four-factor test for fair use mandated by 17 U.S.C. § 107. Cursory arguments are considered waived. *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004).

For the preceding reasons, summary judgment is inappropriate on the question of Gelfand's liability for copyright infringement.

### 3. Copyright Damages

Gelfand argues FMI cannot recover statutory damages or attorney fees because it registered its TUCANS copyright after Gelfand's alleged infringement began. FMI responds that the court need not decide this question on summary judgment. If a plaintiff sues for infringement of an unpublished work, he may not recover statutory damages or attorney fees if the infringement preceded the effective date of the relevant copyright registration. 17 U.S.C. § 412. The same prohibition applies if the relevant work was published before the infringement, unless the plaintiff registered its copyright within three months of first publication. *Id.*

According to FMI, the version of TUCANS at issue was published in 2004. Cmplt., Dkt. No. 216, at 9, n. 1. The effective date of the copyright registration for that version was April 4, 2007. *Id.* at ¶ 47. FMI claims Gelfand's infringement began in 2005. FMI Facts, Dkt. No. 391, at ¶ 13. Because the alleged infringement began before the effective date of the copyright, and because the copyright was not registered within three months of publication, FMI may not recover attorney fees and statutory damages under its copyright claim.

Gelfand further argues FMI cannot recover actual damages because FMI fails to proffer supporting evidence. FMI correctly responds that a plaintiff may establish actual damages based on

10

the value of a defendant's infringing use. *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003). But a plaintiff may not recover value-of-use damages based on undue speculation. *Id.* FMI provides no admissible evidence to support a calculation of the value of Gelfand's unlicensed TUCANS use. All FMI proffers are two redacted invoices purporting to show the cost of TUCANS-related services. FMI Invoices, Dkt. Nos. 386-4, 386-5. These invoices are inadmissible for lack of foundation. FMI offers no evidence to establish the invoices are authentic or exempt from Fed.R.Evid. 802's hearsay ban. *See Thanongsinh v. Bd. of Ed.*, 462 F.3d 762, 777-78 (7th Cir. 2006) (on summary judgment, an affidavit authenticating a document as a business record is generally required for admissibility under Fed.R.Evid. 803(6)). FMI offers no evidence to substantiate its claim for actual damages. Summary judgment is therefore warranted.

## B. Breach of Contract - Gelfand

To prevail on its breach of contract claim, FMI must prove it suffered damages as a proximate result of Gelfand's breach. *TAS Distributing Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007); *Doe v. Northwestern Univ.*, 289 Ill.App.3d 39, 54 (1st Dist. 1997). FMI contends Gelfand breached the licensing agreement by using TUCANS after the agreement's termination. FMI argues it suffered damages because Gelfand "fail[ed] to enter into a new license agreement" to cover its post-termination TUCANS use. Response, Dkt. No. 384, at 15. Gelfand responds FMI fails to prove damages, citing the fact that Gelfand did not pay any fees to FMI under the licensing agreement.

FMI claims the licencing fee it would have received can easily be calculated based on evidence such as "the fair market value of a license." Response, Dkt. No. 384, at 14-15. But on summary judgment, a party bearing the burden of persuasion on an issue cannot simply insist that

11

evidence supporting its claim exists somewhere; it must proffer its evidence. As explained above, FMI proffers no admissible evidence of its damages. Summary judgment is therefore appropriate on FMI's breach of contract claim.

## C.    Copyright Infringement - Citi Defendants

FMI alleges CCSI infringed the TUCANS copyright by encouraging and inducing its attorneys to use TUCANS without a license. FMI further alleges Citigroup infringed the TUCANS copyright vicariously through CCSI, and that CCSI and Citigroup knew of their attorneys' infringement and participated in it.

To prove contributory infringement, FMI must show that CCSI or Citigroup knew about the alleged infringement and materially contributed to it. *Monotype Imaging, Inc. v. Bitstream Inc.*, 376 F.Supp. 2d 877, 883 (N.D. Ill. 2005) (St. Eve, J.). Citi defendants establish (in part because FMI failed to file a response to Citi defendants' Rule 56.1 statement) that, far from inducing infringement of the TUCANS copyright, CCSI instructed its collection attorneys to *stop* using TUCANS before their licenses expired. Citi Facts, Dkt. No. 355, at ¶ 10. FMI filed no supplemental Rule 56.1 statement to rebut this evidence or to present evidence showing that any Citi defendant knew of or contributed to infringement of FMI's copyright. As a result, FMI fails to establish there is any disputed issue of material fact related to Citi defendants' alleged participation in their attorneys' infringement. Pursuant to Citi defendants' motion regarding Counts I and II, summary judgment is awarded to all Citi defendants on Count I.

## D.    Breach of Contract - Citi Defendants

FMI claims CCSI violated the terms of the provisional agreement by transferring accounts from TUCANS to another program and then using the transferred information to collect debts

12

without paying FMI. This alleged conduct does not violate the agreement described in the Gillard letter. That agreement did not prohibit CCSI from transferring information from TUCANS to another software program. Indeed, the explicit purpose of that agreement was "to facilitate migration of Citi's process to a different system." Gillard Letter, Dkt. No. 216-7. The agreement promised FMI payment only for "accounts processed on Tucans [sic] . . . ." *Id.* FMI had no right to fees for collections processed using software other than TUCANS.

Even if the conduct FMI alleges violated the provisional agreement, FMI's failure to proffer supporting evidence dooms its claim. CCSI establishes (again, partially due to FMI's failure to file a response to Citi defendants' Rule 56.1 statement) that it paid FMI under the provisional agreement in response to FMI invoices. Citi Facts, Dkt. No. 355, at ¶ 10. FMI fails to proffer any evidence in accordance with Rule 56.1 to contradict that fact or to substantiate its own allegations. *See* Response, Dkt. No. 405, at 7-9. Summary judgment is granted to all Citi defendants on Count II.

### E. Damages and Attorney Fees

Citi defendants, joined by Gelfand, argue FMI cannot recover statutory damages or attorney fees because it registered its TUCANS copyright after Gelfand's alleged infringement began. For the reasons explained above, FMI may not recover attorney fees and statutory damages under its copyright claim.

Defendants further contend FMI has failed to show its entitlement to infringer profits under 17 U.S.C. § 504. A plaintiff suing for copyright infringement may recover "any profits of the infringer that are attributable to the infringement . . . not taken into account in computing . . . actual damages." 17 U.S.C. § 504(b). To recover infringer profits, FMI must proffer evidence to establish the gross revenue defendants derived from their infringing activity. *Taylor v. Meirick*, 712 F.2d

13

1112, 1122 (7th Cir. 1983). But FMI fails to proffer evidence of any defendant's infringement revenue. FMI acknowledges "[a] plaintiff must establish a causal connection between the infringing activity and [infringer] profits" (Response, Dkt. No. 406, at 3), but offers only unsupported assertions to establish that connection. *See, e.g., id.* at 4 ("The record contains substantial evidence of the connection between the infringing use of the software and CCSI's profits from the collections").

Defendants, in contrast, cite several facts to support their contention that FMI is not entitled to the profits it seeks: FMI failed to provide any basis for a damages calculation in an expert report (Citi Facts, Dkt. No. 359, at ¶¶ 14, 15); CCSI's profits are not based on the amount of credit card debt it collects (*Id.* at ¶ 13); and factors other than alleged infringement determine the amount of debt defendants collect, such as the amount of the debts and the skill of individual collectors (Citi Facts, Dkt. No. 359, at ¶¶ 10, 11). FMI fails to respond with any specific references to countervailing evidence. *See, e.g.,* FMI Response to Citi Facts, Dkt. No. 408, at ¶¶ 10, 11, 13, 14. FMI fails to establish a disputed factual issue concerning the profits it seeks.

## CONCLUSION

Summary judgment is entered for defendants Citigroup Credit Services, Inc., Citigroup, Inc., and Citibank (South Dakota), N.A. on all issues. FMI's copyright infringement claim against the Law Office of Ross Gelfand, LLC survives, but only injunctive and declaratory relief remain.

14

ENTER:

_Suzanne B. Conlon_

Suzanne B. Conlon
United States District Judge

March 17, 2008