IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FM INDUSTRIES, INC., ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 07 C 1794 |
| v. ) | |
| ) | Suzanne B. Conlon, Judge |
| CITICORP CREDIT SERVICES, INC., ) | |
| CITIGROUP, INC., CITIBANK (SOUTH ) | |
| DAKOTA), N.A., and LAW OFFICE OF ) | |
| ROSS GELFAND, LLC ) | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

FMI Industries, Inc. ("FMI") is the claimed owner of TUCANS, a computer software program used in the debt collection industry. TUCANS was developed by FM Ware Industries, Inc. ("FM Ware"), which dissolved in 2004. Michael Friedman was FM Ware's president, and is presently FMI's president and chief executive officer. Friedman, who is not an attorney, has participated in this lawsuit as a paralegal and law clerk for FMI's attorney, Wayne Rhine, by typing Rhine's draft pleadings, then filing FMI's pleadings under Rhine's electronic signature and his electronic filing password. Friedman is also chief financial officer of Friedman & Wexler, Rhine's law firm.

Before the court are two post-judgment FMI motions belatedly challenging summary judgment rulings. In January 2008, FMI's motion for partial summary judgment against defendant Law Office of Ross Gelfand, LLC ("Gelfand") for copyright infringement was denied because of a genuine issue of material fact concerning FMI's ownership of the TUCANS

copyright; its summary judgement motion for breach of contract against Gelfand was denied because FMI failed to provide evidence that it suffered any damages. In March 2008, the summary judgment motions of defendants Citicorp Credit Services, Inc., Citigroup, Inc., and Citibank (South Dakota), N.A. ("Citi defendants") were granted, *inter alia,* because FMI failed to raise a genuine issue of material fact that the Citi defendants knew of or participated in copyright infringement. FMI's Rule 59(e) motion for reconsideration of judgment for the Citi defendants was denied in April 2008.

All that remained for a bench trial was FMI's claim for equitable and declaratory relief against Gelfand for copyright infringement. However, due to FMI's failure to cooperate in preparing and submitting a joint final pretrial order, the surviving claim against Gelfand was dismissed with prejudice. Dkt. No. 455 (May 6, 2008). The court denied FMI's motion to vacate the dismissal order because of its continued failure to submit a joint final pretrial order and its bad faith in repeatedly failing to incorporate Gelfand's materials and objections in FMI's unilateral draft pretrial orders. Dkt. No. 495 (July 23, 2008). The day after FMI's motion to reconsider the dismissal order was denied, FMI filed the present motions challenging the January and March summary judgment rulings under Fed. R. Civ. P. 60(b) in an attempt to change the record with respect to four summary judgment motions resolved months earlier. Dkt. Nos. 496, 498 (July 24, 2008). The Rule 60(b) motions conclusively lack merit, and reflect a continuing pattern of abusive litigation tactics.

## FMI's Partial Summary Judgment Motion

FMI moves to vacate denial of its summary judgment motion on the copyright ownership issue, but does not challenge the basic insufficiency of its breach of contract claim. More than

six months after the summary judgment ruling, FMI attempts to vacate the ruling by introducing a document purportedly establishing its TUCANS ownership. FMI contends a transfer document proffered as an exhibit to its Rule 60(b) motion constitutes newly discovered evidence for relief from judgment under Rule 60(b)(2). However, it is clear from the motion that the document is newly created for purposes of litigation, not newly discovered evidence. FMI acknowledges that Friedman signed the document on February 19, 2008, a month after the summary judgment ruling; indeed, Friedman signed the document as president of FM Ware, a company that was dissolved four years earlier. Mot. at 2, Ex. A. FMI mischaracterizes the Friedman document as a *nunc pro tunc* transfer of the TUCANS copyright to memorialize the allegedly lost original. *Nunc pro tunc* implies the retroactive effect of a document, not the creation of a new document purportedly memorializing a "lost" original seven years after claimed execution.

Friedman's transfer document was obviously created to change the summary judgment record after an adverse ruling. Moreover, FMI fails to make even a rudimentary showing that the Friedman document is admissible. The document is clearly inauthentic evidence of a transfer of the TUCANS copyright, nor does it purport to be a true and accurate copy of the alleged original. Foundation is also lacking. There is no evidence that FM Ware's board of directors actually authorized the alleged original transfer agreement seven years ago, nor is there any evidence the dissolved company ratified the recently created version. The circumstances under which the Friedman document was created suggest the document is unreliable, as well as inauthentic and lacking foundation.

FMI's argument that the Friedman document is newly discovered evidence is frivolous; the document, created for this litigation, is not evidence at all. But even if the Friedman

document were deemed admissible, a disputed issue of material fact would remain as to whether there was a valid transfer of the TUCANS copyright from FM Ware to FMI. There are credibility and reliability issues concerning Friedman's various statements, and adverse inferences may be drawn from the absence of authorization or execution of the "lost" TUCANS agreement in FMI's contemporaneous January 2001 board of directors minutes, as well as from the absence of the "lost" transfer document itself. *See* Memorandum Opinion at 2-3, 4-5, Dkt. No. 375 (January 14, 2008). Viewing the record in a light most favorable to Gelfand, a trier of fact could have reasonably resolved the TUCANS ownership issue in Gelfand's favor. Summary judgment was inappropriate with or without Friedman's document.

Finally, FMI has failed to show that the extraordinary relief of vacating the order denying its summary judgment motion is in the interest of justice under Rule 60(b)(6).

## The Citi Defendants' Summary Judgment Motions

FMI moves to vacate the order granting the Citi defendants' summary judgment motions. FMI seeks to file a new set of summary judgment responses four months after the motions were granted, invoking Rule 60(b)(1). FMI asserts that the wrong draft responses were initially filed due to counsel's excusable neglect in failing to comply with the requirements of Local Rule 56.1. However, the neglect specified in the present motion is not counsel's, but rather the error is attributed to Friedman in his role as Rhine's paralegal. FMI attempts to justify the mistake because Friedman's mother-in-law was seriously ill during the period just before the filing deadline (which had been extended at FMI's request). FMI explains that Friedman electronically signed Rhine's name and then electronically filed preliminary draft responses to one of Citi defendants' three summary judgment motions and Rule 56.1 statements instead of a final version,

4

failed to file a response to another Rule 56.1 statement, and failed to file a Rule 56.1 supplemental statement of facts.

The court found FMI's responsive pleadings were inadequate to raise a material issue of fact concerning the Citi defendants' knowledge of or participation in infringement of the TUCANS copyright. FMI fails to explain why Friedman, a non-lawyer, was delegated the responsibility of signing and filing FMI's summary judgment responses under Rhine's name during a period when Friedman was involved in a stressful family medical crisis. FMI has three attorneys of record: Rhine, Mitchell Asher and William McGrath. FMI fails to offer any explanation for the failure of any of its attorneys to supervise the final preparation and filing of responses to potentially dispositive motions. As the attorney who authorized his signature and electronic filing number to be used on court-filed documents, Rhine had a professional responsibility to review these pleadings before the wrong drafts were filed under his name and the wrong drafts were provided to the court.

The unfortunate illness of Friedman's mother-in-law is immaterial to Rhine's inexplicable failure to review court filings bearing his electronic signature. Rhine's neglect, particularly at a time when he knew his paralegal/law clerk/client had a family crisis, was not reasonable or excusable. There is no basis for vacating the summary judgment order under Rule 60(b)(1). *Pioneer Investment Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993).

It should be noted this is not the first time FMI has attempted to change its response to the Citi defendants' summary judgment motions. Five days after Friedman's erroneous filing and the day before the Citi defendants' replies were due, FMI filed an emergency motion to correct its summary judgment responses. Dkt. No. 412 (February 24, 2008). FMI's summary judgment

5

responses tendered in support of the emergency motion are materially different from the responses now proffered as the "final version." *Compare* Citi Defs. Rule 60(b) Resp., Ex. A and B (FMI's Rule 56.1 statements; the present version has purported record citations for each statement, while the emergency motion version attached to the emergency motion only had three citations to the record).

To compound the confusion repeatedly injected into the case, FMI also claims that its emergency motion and the courtesy copies supplied to the court were yet another "wrong" version of its summary judgment responses. The "mistaken" emergency motion also bears Rhine's electronic signature. Dkt. No. 412. At the hearing on FMI's emergency motion, Rhine failed to inform the court that the wrong version was filed, even after the court informed him FMI's emergency Rule 56.1 supplemental statement of facts was unsupported and argumentative. Accepting FMI's representation that both prior versions of its summary judgment responses were mistakes, Rhine's inexcusable carelessness has caused proliferation of pleadings and needless expenditure of time by the court and the Citi defendants' counsel. And it must be noted that FMI's belated current version of its summary judgment responses includes exhibits lacking any foundation or indicia of admissibility or are immaterial. Several appear to be inadmissible hearsay. *See, e.g.,* Ex. A (Friedman re-creation of purported transfer agreement); Ex. B (draft notices from Citigroup, Inc. purportedly evidencing its vicarious liability); Ex. C (unpaid invoices to Citicorp Credit Services, Inc. For TUCNET, not TUCANS); Ex. D (handwritten notes with hearsay introduction and interpretation). Like the predecessor summary judgment responses, FMI's present new version is insufficient to raise a material issue of fact.

Nor has any basis been provided for relief under Rule 60(b)(6). *See Brandon v. Chicago Bd. of Educ.*, 143 F.3d 293, 295 (7th Cir. 1998) (if relief is sought on grounds of newly discovered evidence or excusable neglect, Rule 60(b)(6) is unavailable). Accordingly, FMI clearly had no reasonable basis in law to pursue this motion under Rule 60(b)(6).

## SANCTIONS

The Citi defendants request that sanctions be imposed on Rhine for vexatiously multiplying these proceedings by filing a baseless Rule 60(b) motion. 28 U.S.C. § 1927. As a sanction, the Citi defendants seek $2,694.60 in attorneys' fees for the preparation of their response to the Rule 60(b) motion. The Citi defendants support the time spent and the preparers' fee rates. Citi Defs. Rule 60(b) Resp. at Ex. D. Rhine does not contest the reasonableness of the fees sought. Rather, he relies on a magistrate judge's conclusion he did not violate Rule 11 by authorizing Friedman to use his electronic signature and to file the summary judgment responses, even though the certificates of service misrepresented that Rhine filed and served FMI's pleadings. The magistrate judge recommended that Rule 11 sanctions not be imposed because Friedman's filing of the wrong summary judgment draft was a mistake. Dkt. No. 529 (Transcript of proceedings May 28, 2008). However, Rhine's present baseless Rule 60(b) motion and the Citi defendants' request for sanctions under § 1927 were not before the magistrate judge. Rhine's success in avoiding Rule 11 sanctions due to Friedman's first misfiling of FMI's summary judgment responses implicated narrow issues and a limited record. It is regrettable that Rhine did not heed the magistrate judge's admonition that Rhine and Friedman were careless in filing pleadings. FMI Reply at 3. In view of this history, Rhine's pursuit of the present Rule 60(b) motion constitutes more than mere carelessness. Months after

7

final judgment as to the Citi defendants, he has unreasonably and vexatiously multiplied these proceedings by pursuing a motion without legal or factual merit. *The Jolly Group, Ltd. v. Medline Indus., Inc.* 435 F.3d 717, 720 (7th Cir. 2006).

## CONCLUSION

FMI's Rule 60(b) motions are ill-considered attempts to change the summary judgment record and re-litigate four motions fully briefed and ruled on months ago. These baseless motions are wasteful to all concerned. FMI's Rule 60(b) motions are denied. Sanctions in the amount of $2,694.60 are imposed on Wayne Rhine under 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying these proceedings.

ENTER:

Suzanne B. Conlon
United States District Judge

October 21, 2008