IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FM. INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 07 C 1794 |
| | ) | |
| CITICORP CREDIT SERVICES, INC., | ) | |
| CITIGROUP, INC., CITIBANK (SOUTH | ) | Magistrate Judge Morton Denlow |
| DAKOTA), N.A. and LAW OFFICE OF | ) | |
| ROSS GELFAND, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before this Court on the Motion for Turnover, Assignment, and Judicial Sale of Certain of Judgment Debtor's Assets filed by Defendant the Law Office of Ross Gelfand, LLC ("Gelfand"), directed at the assets of the judgment debtor, FM. Industries, Inc. ("FMI"). These assets include FMI's ownership interest in: (1) TUCANS software and copyrights[1] (collectively "TUCANS"); (2) a one-half interest in a 2004 Sea Ray Sundancer Boat ("Boat"); (3) a one-half interest in a 2006 BMW Model 330I ("Auto"); (4) two large color printers ("Printers"); (5) one computer work station and monitor ("Computer"); (6) the rights and interests of FMI in its claims against Gelfand only in this lawsuit (07 C 1794) currently on appeal to the Seventh Circuit Court of Appeals ("07 C 1794 Chose in Action"). This excludes claims in this lawsuit against Citicorp Credit Services, Inc., Citigroup, Inc., and Citibank (South Dakota), N.A. (collectively, "Citigroup"); (7) the rights and interests of FMI in the pending

---

[1] "TUCANS" will include, pursuant to the Motion, "TUCANS software and copyright(s) relating thereto . . . along with all related or derivative copyright registrations, derivative works, source code, object code, trademarks, works of authorship, software development kits, application programming interfaces." (Dkt. 622, at ¶ 9(a)).

lawsuit before Judge Joan H. Lefkow against Gelfand, et al.[2] ("08 C 517 Chose in Action"); (8) the rights and interests of FMI in unfiled but asserted causes of action ("Other Choses in Action")[3]; and (9) the rights and interests of FMI in other license agreements ("Other License Agreements")[4].

In its response and objections to Gelfand's motion, FMI requests this Court to (a) grant a stay of all supplemental proceedings without bond pending the outcome of issues on appeal; (b) enter and continue the motion pending the outcome of issues on appeal; (c) deny Gelfand's motion for turnover of FMI's copyright in TUCANS software; (d) deny Gelfand's motion for judicial sale of certain FMI "choses in action;" and (e) dismiss the citation proceedings pending against FMI. Dkt. 630. This Court held oral argument on August 17, 2009. For the follow reasons, this Court grants Gelfand's motion, with limited exceptions, and denies FMI's request for relief. As it relates to the sale procedure and the rights and interests of FMI in other licensing agreements, this Court finds the procedures set forth by Gelfand to be appropriate.

---

[2] This particular lawsuit includes Gelfand, R&B Collections, Inc.; Hosto, Buchan, Prater & Lawrence, PLLC; Law Offices of Harris and Zide; Regent & Associates, LLP; and James D. Cortez, Attorney at Law. (Dkt. 622, at ¶ 9(e)). Collectively, this lawsuit will be referred to as the "08 C 517 Chose in Action."

[3] The unfiled causes of action were asserted in the Michael Friedman Deposition. Approximately thirty-three other law firms were identified arising out of Law Firm License Agreements. (Friedman Dep., pp.124-126).

[4] The other license agreements were asserted in the Friedman Deposition. Approximately eleven other license agreements concerning TUCANS were identified. (Friedman Dep., pp. 19-34).

## I. BACKGROUND FACTS

The factual and procedural history of this case is complex. Therefore, for purposes of this opinion, this Court sets forth only the details necessary to decide the present motion. On February 4, 2009, a judgement was entered awarding $410,156.68 in favor of Gelfand and against FMI ("Judgment"). Dkt. 552, 553, 592. On February 27, 2009, Gelfand issued a citation to discover assets under the Illinois Citation Statute against FMI which was served on March 2, 2009. Dkt. 588, 592. On March 5, 2009, Gelfand issued a citation to discover assets which was served upon FMI's President, Michael Friedman ("Friedman"), on March 7, 2009. Dkt. 581, 592. The citations were referred to this Court by Judge Conlon on March 18, 2009. Dkt. 593.

Michael Friedman has been the President of FMI since 2001. (Dkt. 282, Aff. of Michael Friedman). Mr. Friedman appeared for a deposition in connection with both citations on April 20, 2009 ("Friedman Dep."). Since that time, Gelfand's counsel has made numerous attempts to resolve all of the discovery issues related to the Citation in order to ascertain FMI's ownership interest in certain assets.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 69 ("Rule 69") provides that "A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). The judgment creditor may obtain discovery from the judgment debtor as provided in Rule 69 or by the procedure of the forum state. Fed. R. Civ. P. 69(a)(2). Absent a federal statute, Rule 69 requires a federal court to adopt the procedural law from the forum state. *Star Ins. Co. v. Risk Marketing Group Inc.*, 561 F. 3d 656,

661 (7th Cir. 1993). *See also Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 2009) ("The draftsmen of the rule, rather than design a format for supplementary proceedings—with stages, deadlines, and other forms, powers, and limitations specially adapted to the needs of such proceedings—decided. . . to borrow the format employed in the courts of the forum state"). Therefore, Rule 69 conforms supplementary proceedings to state law, adopting state court procedures "unless there is an applicable federal statute expressly regulating the execution of judgments." *Star Ins. Co.*, 561 F. 3d at 661; Fed. R. Civ. P. 69(a). In Illinois, civil judgments may be enforced through supplementary proceedings pursuant to 735 ILCS 5/2-1402 and Illinois Supreme Court Rule 277.

In supplementary proceedings, the relevant inquiries by the court include: (1) whether the judgment debtor possesses assets to be applied in order to satisfy the judgment; or (2) whether a third party holds any of the judgment debtor's assets to be applied to satisfy the judgment. *Star Ins. Co.*, 561 F.3d at 660-661; *Pyshos v. Heart-Land Dev. Co.*, 630 N.E.2d 1054, 1057 (Ill. App. Ct. 1994).

Supplementary proceedings involve post-judgment processes which support the judgment creditor in asset discovery and final satisfaction of judgment. *Star Ins. Co.*, 561 F.3d at 662-63. Supplementary proceedings are initiated by the service of a citation to discover assets. 735 ILCS 5/2-1402(a); *see also Cacok v. Covington,* 111 F.3d 52, 53 (7th Cir. 1997). The judgment becomes a lien on the judgment debtor's personal property once the citation is properly served upon a party. 735 ILCS 5/2-1402(m); *Cacok*, 111 F.3d at 54. The court may, by appropriate order or judgment, "[c]ompel the judgment debtor to deliver up, to be applied in satisfaction of the judgment, in whole or in part, money, choses in action, property or effects in his or her possession or control, so discovered, capable of delivery and to which his or her title

4

or right of possession is not substantially disputed." 735 ILCS 5/2-1402(c)(1). The sheriff shall collect or sell at public sale the property delivered up by an ordered party; the proceeds of the sheriff's sale with be applied toward the ordered party's payment of costs and the satisfaction of the judgment. 735 ILCS 5/2-1402(e). If the judgment debtor's property cannot be readily delivered to the sheriff for public sale or if another method is more appropriate, then the court may order the property sale by the debtor, a third party respondent, or by a selling agent upon such terms as are just and equitable. *Id.*

Gelfand proposes to conduct the judicial sale of the alleged FMI assets in the following manner. Gelfand will sell FMI's right, title and interests, if any, in and to the FMI assets listed. Any proceeds received in the sale will be applied to reduce the judgment, together with interest at the statutory judgment interest rate. Additional and permitted costs incurred by Gelfand may be added after the judgment. Gelfand's counsel, Brad A. Berish, will be the Selling Officer who will sell the items in six separate groupings for cash at a publicly advertised auction conducted on a date that is no sooner than fourteen days following initial notice. Notice will be given in the *Chicago Tribune* for two consecutive Sundays and will serve a copy of the Notice via email or personal delivery to all parties. The sale will take place at Adelman & Gettleman, Ltd., at 53 West Jackson Blvd., Suite 1050, Chicago, IL 60604. Prior to the sale, Gelfand and its Selling Officer shall be given access to the FMI assets upon reasonable notice of no less than twenty-four hours to inspect any or all of the assets. Successful purchasers shall pay the Selling Officer by cash or certified funds, which the Selling Officer shall hold pending approval of a confirmation order. Unless agreed to in writing, the successful purchaser will not assume or be liable for any liabilities of FMI on the sold assets. Within seven days following the sale's conclusion, the Selling Officer will file a report with this Court evidencing that the procedures

have been complied with and specifying the amount of sale proceeds realized. Upon entry of the confirmation order from this Court, the Selling Officer will execute a bill of sale to the successful purchaser which will convey all rights, title and interest of FMI.

There is no sheriff in this Court; likewise, the federal marshal's office in this Court is not equipped to hold public sales of personal property in connection with civil judgments. Gelfand's proposed sale procedure is appropriate pursuant to 735 ILCS 5/2-1402(e). Moreover, FMI does not object to the proposed sale procedure.

### III. DISCUSSION

1. **TUCANS Software and Related Copyrights**

Gelfand's motion does not seek a determination of TUCANS ownership. Instead, Gelfand seeks a judicial sale and turnover of whatever interest FMI has in TUCANS. The only relevant inquiries on supplemental proceedings are: (1) whether the judgment debtor is in possession of assets that should be applied to satisfy the judgment; or (2) whether a third party is holding assets of the judgment debtor that should be applied to satisfy the judgment. *Pyshos,* 630 N.E.2d at 1057. In his citation deposition, FMI's President Michael Friedman testified that FMI owned the TUCANS software. Friedman Dep. at 91. Consequently, a sale of any interest whatsoever that FMI has in TUCANS is appropriate towards satisfying the judgment.

2. **Boat and Auto**

Gelfand requests turnover and a judicial sale of FMI's one-half interest in a 2004 Sea Ray Sundancer Boat and in its one-half interest in a 2006 BMW model 3301. The one-half interest in the Boat and the one-half interest in the Auto may be sold pursuant to the proposed procedure.

3. **Printers and Computer**

Gelfand seeks the turnover and sale of two printers[5], one computer, and one monitor. FMI does not object to the turnover of this equipment. Gelfand will conduct notice and publication of all FMI assets in one notice and publication document. The sale of these items may go forward under the proposed procedure.

4. **Rights and Interests of FMI in Two Pending Pawsuits (the "07 C 1794 Chose in Action" and the "08 C 517 Chose in Action")**

Gelfand seeks the turnover and judicial sale of the two Choses in Action currently pending before the Seventh Circuit and Judge Lefkow. FMI argues that to permit such a turnover and sale would present the possibility that Gelfand, as a defendant in said actions, will assume and dismiss the action against it. Illinois law permits the turnover and judicial sale of, *inter alia*, choses in action in supplemental proceedings brought against the judgment debtor. 735 ILCS 5/2-1402(c)(1) provides that a court may by appropriate order:

> (1) Compel the judgment debtor to deliver up, to be applied in satisfaction of the judgment, in whole or in part, money, *choses in action*, property or effects in his or her possession or control, so discovered, capable of delivery and to which his or her title or right of possession is not substantially disputed. (Emphasis added)
>
> * * *
>
> (5) Compel any person cited to execute an assignment of any *chose in action* or a conveyance of title to real or personal property or resign memberships in exchanges, clubs, or other entities in the same manner and to the same extent as a court could do in any proceeding by a judgment creditor to enforce payment of a judgment or in aid of the enforcement of a judgment. (Emphasis added)

---

[5] Pursuant to Plaintiff's Reply, it must be noted that the two printers identified in the Friedman Deposition are in error: one is an Epson printer and one is a HP printer. Pl.'s Reply ¶ 29.

Collection proceedings may commence while an appeal is pending. *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1223 (7th Cir. 1993). Illinois law allows a judgment creditor to pursue a contingent asset such as a potential judgment by serving a citation to discovery assets. *Cacok*, 111 F.3d at 53. The court may compel the assignment of choses in action to the judgment creditor. *Phelan v. State Farm Mut. Auto. Ins. Co.*, 448 N.E. 2d 579, 583 (Ill. App. 1983). In *Phelan*, the judgment creditor obtained turnover of the judgment debtor's bad faith chose in action claim. The court in *Phelan* held that the judgment creditor had standing to sue judgment debtor's insurer, State Farm, because the Illinois Citation Statute permits the judgment creditor to obtain an assignment of a chose in action. The court further noted that the Illinois Citation Statute "does not contain any limitations on the nature of the choses in action for which assignment may be compelled." *Id. See also Home State Bank v. Potokar*, 617 N.E. 2d 1302 (Ill. App. 1993) (court can require a party to assign a federal court cause of action in order to satisfy a judgment).

In *Citizens National Bank v. Dixieland Forest Products, LLC*, 935 So.2d 1004 (Miss. 2006), a judgment was entered for the bank (defendant) against the borrower (plaintiff) for outstanding loans. During post-judgment collection proceedings, the bank levied upon the judgment debtor's chose in action for lender liability claims against the bank. At the sheriff's sale, the bank was the highest bidder, thereby purchasing the chose in action against itself. *Id.* at 1011. The bank then substituted itself in the chose in action as the plaintiff and dismissed the chose in action against itself. *Id.* at 1013-1014. The Mississippi Supreme Court examined the state's Citation Statute. ("Under both clear statutory language . . ., the [judgment debtor's] lawsuits were choses in action and subject to a writ of execution, and the procedure selected by the bank, that is, the initiation of a sheriff's execution sale against the . . . choses in action, was

entirely appropriate"). Furthermore, the Court found no statutory exception to preclude a judgment creditor or defendant therein from bidding at the sale of a chose in action. *Id.* at 1012.

This specific issue appears to be one of first impression in Illinois. Gelfand seeks a judicial sale of the Choses in Action, rather than an assignment. Case law and the statute specifically permit a judicial sale of choses in action as well as assignments of choses in action. 735 ILCS 5/2-1402(c)(5) (assignment); 735 ILCS 5/2-1402(e) (judicial sale); *see generally Phelan*, 448 N.E. 2d 579.

The Illinois Citation Statute does not restrict the ability of a defendant to be a potential buyer in a judicial sale of a chose in action. 735 ILCS 5/2-1402(c)(1). Illinois law does not limit the types of choses in action that may be transferred (through assignment) or sold (through judicial sale). 735 ILCS 5/2-1402(c)(5) (assignment); 735 ILCS 5/2-1402(e) (judicial sale). Therefore, the pending choses in action may be turned over for judicial sale. The potential choses in action against approximately thirty-three other law firms will not be sold at this time because the claims are too vague to comprehend.

   **5.**   **Rights and interests of FMI in Other License Agreements**

Gelfand seeks turnover and judicial sale of FMI's interests in approximately eleven other license agreements. FMI argues the licenses sought by Gelfand are of no value and cannot be construed as an asset for purposes of turnover and judicial sale. FMI also argues the licenses are non-transferable pursuant to the language therein. Pursuant to the citation, FMI must provide Gelfand with a copy of the Other License Agreements, pursuant to discovery requests in order that they may be examined for purposes of turnover and judicial sale. Any valuable interests FMI has therein that are not limited by contractual language may be subjected to turnover and judicial sale in accordance with the proposed sale procedure.

## IV. CONCLUSION

For the reasons set forth in open court and more fully explained in this opinion, Gelfand's motion for turnover and judicial sale of certain assets is granted, Gelfand's procedures regarding the other licensing agreements are appropriate, and FMI's request for relief is denied.

**SO ORDERED THIS 3rd DAY OF SEPTEMBER, 2009.**

*/s/ Morton Denlow*

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Wayne Rhine
500 W. Madison St., #2910
Chicago, IL 60661


Counsel for Plaintiff


John J. Duffy
Karen Kies DeGrand
Edward E. Fu
DONOHUE BROWN MATHEWSON & SMYTH LLC
140 South Dearborn Street, Suite 800
Chicago, IL 60603

Brad A. Berish
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard, Suite 1050
Chicago, IL 60604
Telephone: (312) 435-1050


Counsel for Defendant